**Martin A. WEINSTEIN and Alma J. Weinstein, Appellants-Defendants,**

v.

**UNITED STATES of America, Appellee-Plaintiff.**

**No. 74–1904.**

United States Court of Appeals, Sixth Circuit.

Feb. 19, 1975.

---

tion (SBA) against guarantors of a mortgage indebtedness. Upon cross motions for summary judgment the district court found that there existed no genuine issue of material fact and that plaintiff was therefore entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. This appeal ensued.

The operative facts of the case, uncomplicated and uncontroverted, may be briefly stated. On April 30, 1971, Ohio Wholesale Gifts Co., Inc., an Ohio corporation, issued a promissory note to secure a loan of $25,000 from Capital National Bank of Cleveland, Ohio. The note provided that upon default the collateral could be sold by the holder without prior notice. In conjunction with the execution of the note, Martin A. Weinstein and wife, Alma J. Weinstein, signed an unconditional guaranty of payment of the indebtedness. Included in the guaranty was a waiver of notice with respect to the sale of the collateral pledged by the debtor to secure the loan.

The loan payments by Ohio Wholesale Gifts Co., Inc., subsequently became in arrears. Thereafter (on February 5, 1972) Martin A. Weinstein, acting individually and as president of the company, agreed to a sale of the collateral and executed a waiver of the notice required under Ohio Revised Code § 1319.07,[1] which requires prior notice to the mortgagor of any sale of collateral in order for the mortgagor to be held liable for any deficiency. This waiver was not signed by Alma J. Weinstein. Neither did the document expressly acknowledge any continuing liability of the debtor or guarantor for any deficiency remaining after the sale.

Marvin A. Sicherman, Dettelbach & Sicherman, Cleveland, Ohio, for appellants-defendants.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, Joseph A. Cipollone, Asst. U. S. Atty., for appellee-plaintiff.

Before MILLER and LIVELY, Circuit Judges, and McALLISTER, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from a judgment in favor of the Small Business Administra-

1. Ohio Revised Code § 1319.07 provides as follows:

   **1319.07 (8565–3). Deficiency judgment prohibited.**

   Any chattel mortgagee, his executors, administrators, successors, or assigns who takes goods, chattels, or property, covered by the chattel mortgage out of the possession of the mortgagor, his executors, administrators, successors, or assigns by seizure, or repossession, and sells or otherwise disposes of the same before foreclosure of such mortgage in a court of record, shall not pursue or collect any deficiency upon such mortgage or the obligation secured thereby, from such mortgagor, his executors, administrators, successors, or assigns, any stipulation in such mortgage, or agreement, or provision of law to the contrary notwithstanding. This section does not apply if the mortgagee, his executors, administrators, successors, or assigns, gives at least ten days' written notice to the mortgagor, his executors, administrators, successors, or assigns, personally, or by mailing it to him by

On April 6, 1972, the SBA, then the holder of the note as assignee,[2] notified the Weinsteins that the note was due, with a balance owing of $15,708.46. Payment not being made, the present action was filed seeking recovery against the guarantors for the remaining balance of the indebtedness after sale of the collateral. Appellants admitted the debt and the guaranty but by way of affirmative defense alleged that the SBA was barred from recovery of any deficiency because of its failure to comply with the notice requirements of § 1319.07. The sole issue below and on appeal is whether the defendants' affirmative defense barred recovery for the deficiency. The district court held that it did not.

The Ohio courts have required strict compliance with the ten day notice requirement of § 1319.07 as a precondition to recovery of deficiency judgments. It has been held that even a voluntary surrender of the collateral does not dispense with the notice requirement. Cities Service Oil Co. v. Burkett, 176 Ohio St. 449, 200 N.E.2d 314 (1964).

■ The SBA is required to comply with state laws enacted to protect its citizens where such compliance does not interfere with a federal interest. United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966).[3] The critical question in this case is whether a waiver of the notice requirement will prevent a guarantor of an indebtedness from relying upon noncompliance as a defense in an action to recover a deficiency.

In addition to the language in § 1319.-07, providing in effect that the right to notice is not subject to waiver, Section 1309.44(C) of the Ohio Revised Code speaks to the point. That statute provides in pertinent part:

> To the extent that [it gives] rights to the debtor and impose[s] duties on the secured party, section 1319.07 . . may not be waived or varied [with exceptions not here material] . . . but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable.

It is readily seen that the statutory language of Secs. 1319.07 and 1309.44(C) does not address itself to the question whether a guarantor may waive the notice requirement. The most recent Ohio Supreme Court case interpreting these statutes is Mutual Finance Co. v. Politzer, 21 Ohio St.2d 177, 256 N.E.2d 606 (1970), a case relied upon both by the district court and by the parties on appeal.

The facts in *Politzer* are similar to those in the case at bar. The three *Politzer* defendants were unconditional guarantors of a loan made to a company in which they were stockholders. Upon default, the collateral was repossessed by the chattel mortgagee-creditor who

registered mail, at the address of the mortgagor given in the mortgage, of the time, place, and the minimum price for which the mortgaged property may be sold, together with a statement that the mortgagor may be held liable for any deficiency resulting from said sale. The mortgagor, his executors, administrators, successors, or assigns, may redeem the property prior to the time stated in the notice for its sale or disposition, by paying the mortgagee, his executors, administrators, successors, or assigns, the amount due and unpaid on the obligation secured by the mortgage. Any person may appear at the time and place of sale mentioned in such notice and bid at such sale. At the time and place mentioned in such notice the mortgaged property shall be sold to the highest bidder if his bid equals or exceeds the minimum price set forth in the written notice given the mortgagor.

2. It is unclear whether this assignment was executed prior to both the waiver and sale, between the two, or after both the waiver and the sale. The district court's language appears to imply that at least the sale was held after the assignment. The government's brief states that the SBA sold the collateral. However, appellants' brief indicates that the collateral was sold by the Capital National Bank prior to the assignment to SBA. For reasons stated below we find the discrepancy to be of no consequence.

3. Of course there is no question that such compliance was required if the sale in this case was by the Capital National Bank rather than the SBA. See note 2, *supra*.

obtained the signatures of two of the defendants[4] to an agreement permitting the sale of the collateral without giving the notice required by § 1319.07, and stipulating that defendants were to be responsible for any deficiency balance after the sale of the collateral. An action was subsequently brought to recover from the guarantors the deficiency remaining on the indebtedness after application of the proceeds of the sale. There, as here, the guarantors raised the affirmative defense of lack of compliance with the notice statute.

The court in *Politzer* stated:

> We conclude therefore that a chattel mortgagee is precluded from proceeding against a guarantor of the mortgage indebtedness for a deficiency where Section 1319.07, Revised Code, precludes such chattel mortgagee from proceeding against his chattel mortgagor for such deficiency. Any protection thus given to the guarantor is merely a necessary incident of the protection that the statute is designed to give to the guarantor's principal, the mortgagor.

As further pointed out in the opinion, Sec. 1319.07 was designed to protect chattel mortgagors to prevent deficiency judgments against them unless the mortgagee performs the duties with regard to the notice imposed upon him by the second sentence of the statute. Sec. 1309.44(C) adds to the protection thus afforded by providing that the notice requirement of Sec. 1319.07 may not be waived with certain exceptions not applicable here. The legislative intention is thus clearly indicated by these statutory provisions to prevent a chattel mortgagee from relying upon any agreement with or waiver by his mortgagor as a basis for recovery of a deficiency judgment against him where the notice requirements of Sec. 1319.07 have not been complied with.

Since the law implies the obligation of a principal debtor (mortgagor) to reimburse his guarantor for any amount that the guarantor is required to pay on the guaranteed indebtedness, the guarantor may ordinarily plead as a defense against any claim for a deficiency judgment the failure of the chattel mortgagee to give the prescribed notice to the chattel mortgagor.

Nevertheless, although the court in *Politzer* recognized these principles, it proceeded to hold that despite failure of the mortgagee to comply with the notice requirement, a guarantor of payment of an indebtedness secured by chattel mortgage, may "waive his right to rely or estop himself from relying upon" the chattel mortgagee's failure to give the statutory notice to the mortgagor as a defense against the chattel mortgagee's claim for a deficiency judgment. *Politzer* reasoned that such a waiver or estoppel will not have the effect of preventing the chattel mortgagor from receiving the protection which the notice statute was designed to give him. This is true since a guarantor cannot compel the principal debtor (mortgagor) to reimburse him for payment on the guaranteed indebtedness if the principal debtor (mortgagor) had a valid defense against the claim for such payment.

On the facts presented, the court in *Politzer* found that the defendants, Edward and Karen Politzer, by signing, after default by the mortgagor and repossession of the collateral by the mortgagee, an agreement expressly waiving the requirements of Sec. 1319.07, and recognizing that they would be liable for any deficiency which may exist after the sale, in effect induced the mortgagee to proceed with the sale without giving the statutory notice and were thus estopped to rely upon such failure as a defense.

■ As in *Politzer*, Martin Weinstein's waiver was executed by a guarantor in

---

**4.** The third defendant, Shirley Politzer, signed a guaranty but did not sign the subsequent waiver and agreement to sell the collateral. The opinions of the Court of Appeals and

Supreme Court of Ohio in *Politzer* do not indicate what language of waiver was used in the original guaranties.

connection with an agreement to sell the collateral. It would appear that *Politzer* is directly in point and that Martin Weinstein "waiv[ed] his right to rely or estop[ped] himself from relying upon a defense against the . . . mortgagee based upon his failure to comply with the notice requirements of Section 1319.07, Revised Code." 256 N.E.2d at 611. It is defendant Martin Weinstein's contention, however, that there are certain factors which should distinguish this case from *Politzer*. We find these contentions to be without merit even if we accept defendant's argument that *Politzer* is based on a theory of estoppel rather than waiver.

Defendant Martin Weinstein first argues that it is not true in this case, as it was in *Politzer*, "that the notice required was dispensed with for the benefit of and at the request of the guarantors," or "that the mortgagees were prepared to provide the required notice." While the record does not clearly indicate who "requested" the waiver in this case, this fact is not of critical importance. If both parties are in agreement, it is irrelevant who first suggested the waiver. Furthermore, there is no indication that the mortgagee in this case was any less prepared to give the required notice than was the mortgagee in *Politzer*. The fact is that such notice was not given because it appeared to become unnecessary in light of the agreement of sale and waiver. The only question to be determined is whether the defendant here, by his signing of the agreement to sell with its waiver of right to notice, induced the plaintiff to forego the giving of notice and thereby estopped himself from relying on the defense of lack of notice in an action to recover the deficiency. We believe the facts here compel this result to the same extent as the facts in *Politzer*.

It is further insisted that the waiver executed in this case was not voluntary and knowledgeable and therefore was ineffective to estop Martin Weinstein from relying on the defense of failure to provide notice. This contention is based on the fact that the waiver in this case, unlike the *Politzer* waiver, did not contain a paragraph which expressed a recognition and reaffirmation of the fact that the mortgagee would hold the guarantor liable for any deficiency balance resulting after the sale. We are not convinced that such an acknowledgement of continued liability for any deficiency was necessary. The guarantor should have been aware that he was liable for the full amount of the note on default by the mortgagor or for any deficiency after sale of the collateral. A statement in the agreement to sell that the guarantor would be liable for any deficiency was completely irrelevant to the question of whether defendant's waiver was voluntary and knowledgeable. Even if notice of the sale had been given rather than defendant having waived such notice, he would nevertheless have been liable for the deficiency. The only way defendant would *not* have been liable would have been if he had *not* waived the right to notice *and* the mortgagee had *then* failed to provide such notice to the mortgagor. Such an occurrence would in effect have been a *penalty* against the mortgagee for violation of the statute.

Defendant Martin Weinstein finally contends that he should not be estopped because in this case, unlike *Politzer*, there was no good faith reliance on his waiver since the statute by its language (". . . any stipulation in such mortgage, or agreement, or provision of law to the contrary notwithstanding") prevents any good faith reliance on his representation of waiver. It is further argued that there has been no evidence showing a detrimental change of position by the SBA in reliance on defendant's waiver.

■ This argument is without merit. As we have pointed out above, § 1319.07 does not extend its protection to guarantors in this type of situation and does not therefore prevent reliance on a purported waiver extended by a guarantor. In addition, the SBA did in fact detrimentally rely on the inducement of defendant in executing the waiver. While

it is not clear whether it was the SBA or the bank that sold the collateral, the SBA certainly relied to its detriment, if not in selling the collateral then in accepting the assignment of the note from the bank after the sale with the expectation that the waiver would enable it to obtain a deficiency judgment. It could hardly be said that the SBA would not suffer a detriment if the waiver in this case were not upheld.

We turn to the question whether defendant Alma Weinstein can be said to have executed an effective waiver or to be estopped from relying on the defense of noncompliance with § 1319.07. Alma Weinstein, as noted, was not a signatory to the agreement to sell and waiver executed by Martin Weinstein after the note payments had become in arrears. The only waiver signed by her was the general waiver of notice included in her original guaranty. In this posture she is similarly situated as was Shirley Politzer in the *Politzer* case who had signed only a guaranty and not a subsequent agreement to sell with a waiver of notice. Shirley Politzer was therefore found not to have waived her right to notice or to be estopped from asserting the defense of lack of notice. 256 N.E.2d at 611.

It is true that the *Politzer* opinion does not specifically indicate that the guaranty signed by Shirley Politzer included waiver language similar to that found in Alma Weinstein's guaranty. We deem this fact to be of no consequence, however, as we interpret *Politzer* as relying more on the theory of estoppel than on waiver. That this is the thrust of the court's analysis can be seen from the language used. Rather than speaking of a guarantor having "waived his *right to notice*" the court speaks in terms of one being able to "waive his *right to rely* or *estop* himself *from relying* upon a *defense* . . . based upon [a mortgagee's] failure to comply with . . . Section 1319.07." 256 N.E.2d at 611. (emphasis added). The language of the court, in emphasizing that defendants "induced and participated in the actions of the plaintiff" and therefore were estopped "from taking the unconscionable

position that the conduct . . . ., which they induced, now provides them with a defense" further supports this position. Whether or not Shirley Politzer's guaranty included a waiver, she did not participate in the subsequent inducement of the mortgagee to sell to the extent that the other guarantors had estopped themselves from relying on a lack of notice.

Similarly, in the case at bar, it is apparent that the mortgagee was not induced to its detriment to rely upon the waiver language in the Martin and Alma Weinstein guaranty alone. This is evident from the fact that it was thought to be necessary to obtain from Martin Weinstein a second, more specific, waiver in the context of an agreement to sell the collateral. Thus, no detrimental reliance on the guaranty waiver language is demonstrable. We must conclude, therefore, that Alma Weinstein has a valid defense of lack of compliance with § 1319.07.

For the foregoing reasons, the judgment against defendant Martin A. Weinstein is affirmed and the judgment against defendant Alma J. Weinstein is reversed and the action remanded for any further proceedings which may be necessary consistent with this opinion.