**FIRST NATIONAL PARK BANK,**
Plaintiff-Appellee,

v.

Snellen M. JOHNSON and Ven Savage,
Defendants-Appellants.

Nos. 75–1354, 75–1413 and 75–3303.

United States Court of Appeals,
Ninth Circuit.

April 7, 1977.

Rehearing Denied May 10, 1977.

William D. Murray, Jr., McCaffery & Peterson, Butte, Mont., for defendants-appellants.

Lorin N. Pace, Salt Lake City, Utah, Arthur P. Acher, Rankin & Acher, Helena, Mont., submitted on briefs, for plaintiff-appellee.

Before CHOY and KENNEDY, Circuit Judges, and PREGERSON,* District Judge.

KENNEDY, Circuit Judge:

First National Park Bank (the bank) brought an action against Johnson and Savage as guarantors of a loan made to Great Western Ranches, a Utah corporation (the Utah corporation). The action was brought in the District of Montana. Jurisdiction exists by reason of diversity of citizenship, and the law of Montana controls the substantive questions presented.

Between January 21, 1969 and July 23, 1969, the bank financed the purchases of three airplanes by the Utah corporation. Each of the three loans was secured by the airplanes. On July 23, 1969, the date on which the third airplane was financed, Johnson and Savage (the guarantors), officers of the Utah corporation, personally guaranteed repayment of the Utah corporation's three bank loans. On August 12, 1969, a Nevada corporation took over all the assets of the Utah corporation. Apparent-ly, the Nevada corporation did not assume the Utah corporation's debts to the bank.

The payments due to the bank became delinquent as early as October 1969. Some time thereafter, the bank repossessed the airplanes. In August 1970, the Nevada corporation filed a proceeding under Chapter X of the Bankruptcy Act. The bank applied to the bankruptcy court to modify a restraining order so that the bank could pursue its remedies with respect to the airplanes. The bank's application was granted, and the bank resold the airplanes at private sales, with a resulting deficiency of $68,661.78 plus interest.

The bank filed a claim in the Chapter X proceeding, seeking to recover the deficiency from the Nevada corporation. The claim was denied. The bank then brought the instant action against the guarantors to recover the deficiency. The district court denied the guarantors' motion for summary judgment and entered summary judgment in favor of the bank. The guarantors appeal. The bank cross appeals from the trial court's refusal to grant an award of attorneys' fees against the guarantors. We affirm in all respects.

*Appeal by the Guarantors*

On appeal, the guarantors contend that the bank's failure to notify the debtor that the collateral would be sold bars recovery of the deficiency from the guarantors. For the purpose of determining the correctness of summary judgment in this case, we assume that the bank did not comply with the notice provisions of Mont.Rev.Codes Ann. § 87A–9–504(3) (Uniform Commercial Code (UCC) § 9–504(3)).[1]

---

* Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

1. That section provides in pertinent part:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financ-

A substantial number of jurisdictions have addressed the question whether a creditor who has failed to comply with the notice provisions of UCC § 9–504(3) may recover a deficiency judgment from the debtor. Some courts have barred a deficiency judgment altogether. *See United States v. Whitehouse Plastics,* 501 F.2d 692, 695 n.3 (5th Cir. 1974) and cases cited therein. Others have held that failure to give notice does not bar a deficiency judgment, but the value of the collateral is presumed to equal the amount of the debt, and the burden is on the secured creditor to establish that the collateral is worth less than that amount. *Id.* n.4 and cases cited therein. We have found no Montana cases specifically addressing this issue. Even assuming, however, that the Montana courts would bar a deficiency judgment against a principal debtor who had not received notice, it does not necessarily follow that the Montana courts would interpret Mont.Rev. Codes Ann. § 87A–9–504(3) as requiring the same result in a suit against a *guarantor,* whose rights are not expressly governed by article 9 of the UCC.

The policies underlying UCC § 9–504(3) would seem to require that the guarantor have a defense to a deficiency claim where the secured party fails to give the principal debtor statutory notice of the sale. This follows from the obligation of a principal debtor to reimburse his guarantor for any amount that the guarantor is required to pay on the guaranteed indebtedness: Were the guarantor not afforded such a defense, then, after paying a judgment for a deficiency, he could recover from the principal debtor the amount of that judgment. *Mutual Finance Co. v. Politzer,* 21 Ohio St.2d 177, 256 N.E.2d 606, 610 (1970). *Accord, Weinstein v. United States,* 511 F.2d 56, 59 (6th Cir. 1975).

■ We therefore assume that lack of notice to the debtor may be a defense that is available to the guarantor in a suit brought by the secured party. The question here is whether the guarantor waived that defense by signing the guaranty agreement and if so whether the UCC prohibits such a waiver. The district court correctly found that the guarantors had waived their right to rely on lack of notice as a defense. The guaranty agreement unambiguously contains such a waiver, in accordance with which the bank could sell or release the collateral without notice to the guarantors and without affecting their absolute liability.[2] Such language is sufficient to constitute a waiver of any right to notice the guarantors may have had. *See Weinstein v. United States,* 511 F.2d at 60. We therefore hold that the bank's failure to give notice to the debtor was a defense waived by the guarantors in this case.

■ The guarantors nevertheless contend that even though the guaranty agreement contained a waiver, waiver of notice under UCC § 9–504(3) is specifically barred by Mont.Rev.Codes Ann. § 87A–9–501(3), UCC

ing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. *The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.* (emphasis added).

2. The guaranty agreement provides in relevant part:

The Bank is expressly authorized to forward or deliver any or all collateral and security which may at any time be placed with it by the Debtor or any of the undersigned, or any other person, directly to the Debtor for collection and remittance or for credit, or to collect the same in any other manner and to exchange or surrender with or without consideration any or all of such collateral and security without notice to any of the undersigned and without in any manner affecting the absolute liability of any of the undersigned hereunder. The liability of each of the undersigned hereunder shall not be affected or impaired by any failure, neglect or omission on the part of the Bank to realize upon any such indebtedness of the Debtor to the Bank, or upon any collateral or security for any or all such indebtedness, nor by the taking by the Bank of any other guaranty or guaranties to secure indebtedness of the Debtor to the Bank, nor by the taking by the Bank of collateral or security of any kind.

§ 9–501(3).[3] We disagree. First, section 9–501(3) applies only to "debtors"; the guarantors are not debtors within the meaning of that section. *Cf. EAC Credit Corp. v. King,* 507 F.2d 1232, 1238 (5th Cir. 1975). *But see Rushton v. Shea,* 423 F.Supp. 468, 470 (D.Del.1976). Section 9–501(3), therefore does not by its terms mandate a holding that a guarantor is precluded by UCC § 9–501(3) from waiving a defense of lack of notice to the debtor.

▇▇▇ Second, the policies of the UCC notice provisions do not require that we apply, by implication, the nonwaiver statute to a guarantor. Where both the principal debtor and the guarantor had or would have had a valid defense against payment, but the voluntary conduct of the guarantor amounts to a waiver of that defense by the guarantor, the latter may not obtain reimbursement from the principal. *Mutual Finance Corp. v. Politzer,* 256 N.E.2d at 612, *citing* 38 C.J.S. *Guaranty* § 111 at 1299. A holding that the guarantors waived the creditor's failure to give notice will not deprive the principal debtor of the protections of section 9–504(3). The district court here properly held that the bank's action for a deficiency was not barred by the UCC.

▇▇▇ The guarantors contend that, apart from the provisions of the UCC, the bank's failure to give notice to the debtor impaired their right to proceed against the collateral and their rights of subrogation, thereby discharging them from liability for the deficiency. The guaranty in this case, however, is absolute and unconditional. The guarantors agreed to subject themselves to absolute liability for the obligation. Indeed, the guaranty agreement contained an express waiver of any right to notice the guarantors may have had. Where a guaranty is unconditional, a creditor, at least absent willful or grossly negligent waste or misconduct, may recover a deficiency judgment from an unconditional guarantor without regard to the creditors' treatment of the collateral. *United States v. Bertie,* 529 F.2d 506, 507 (9th Cir. 1976); *see United States v. Proctor,* 504 F.2d 954 (5th Cir. 1974); *Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp.,* 243 F.2d 196 (10th Cir. 1957). In the instant case, there was no allegation of willful or grossly negligent waste or misconduct; indeed, the record is devoid of any indication that the collateral was not sold for a commercially reasonable price. The amount of the deficiency being established, we hold that such deficiency may be recovered from the guarantors and that summary judgment in favor of the bank was appropriate.

▇▇▇ Appellants next contend that under the doctrine of collateral estoppel, the bankruptcy court's denial of the bank's claim for a deficiency in the Chapter X proceeding bars recovery from the guarantors here. The argument is without merit. The bankruptcy court did not determine the question of the liability of the guarantors for the deficiency. The district court properly rejected the guarantor's claim of collateral estoppel.

*Cross Appeal by the Bank*

The bank cross appeals from the district court's denial of attorneys' fees. The guaranty agreement provides that the guarantors:

> hereby jointly and severally unconditionally guarantee the prompt payment when due . . . of any and all notes, drafts, checks, and all other indebtedness and liabilities of whatsoever nature . . . at any time owed or contracted by the debtor to the bank . . . together with any and all expenses of and incidental to collection, including attorneys' fees
>
> . . . .

The bank contends that the quoted language required that the district court award attorneys' fees.

▇▇▇ The language in the guaranty agreement refers to recovery of attorneys' fees incidental to collection of the debt *from the principal debtor.* The instant ac-

---

**3.** That provision provides in part:

> To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied
>
> . . . .

tion is on the guaranty. We agree with the district court that this language falls within the rule of *Schauer v. Morgan,* 67 Mont. 455, 471, 216 P. 347, 352 (1927), in which it was stated:

> The judgment entered in this action is for $4,692 and legal interest. It also awards to plaintiff an attorney's fee of $500. The note delivered to plaintiff with the guaranty provided for a reasonable attorney's fee, if the note was placed in the hands of an attorney for collection. This action is upon the guaranty. The provision for an attorney's fee relates only to proceedings to collect the note, and since the action is not upon the note the attorney's fee was improperly allowed.

*Accord, Securities Investment Co. of St. Louis v. Donnelley,* 513 P.2d 1238, 1243 (Nev.1973). We note further that the guaranty agreement should be construed most strongly against the bank, the party responsible for its drafting. *Miller v. Walter,* 165 Mont. 221, 527 P.2d 240, 245–46 (1974). We therefore hold that the request for attorneys' fees was properly denied.

AFFIRMED.