In re Larry Dean **KIRKLAND** and Billie Kirkland, Debtors.

**SECURITY PACIFIC NATIONAL BANK, Appellant,**

v.

**Larry Dean KIRKLAND and Billie Kirkland, Appellees.**

No. 88–15519.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1989.

Decided Oct. 15, 1990.

Richard A. Rogan and John Chu, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for appellant.

John H. MacConaghy, Koller & MacConaghy, Emeryville, Cal., Robert L. Hughes, Lempres & Wulfsberg, Oakland, Cal., for appellees.

Before POOLE, NELSON and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

Appellant, Security Pacific National Bank (Security Pacific), brought this action against appellees, the Kirklands, to collect a deficiency claim on loans made and secured by Security Pacific and guaranteed by the Kirklands. In bankruptcy proceedings initiated by the Kirklands, the bank-ruptcy court granted summary judgment in favor of the Kirklands disallowing Security Pacific's deficiency claim against the Kirklands because Security Pacific failed to notify the Kirklands of the sale of collateral prior to its disposition in contravention of California Commercial Code § 9504(3). The bankruptcy appellate panel affirmed and this appeal timely followed. We affirm and deny Security Pacific's request for summary judgment.

## BACKGROUND [1]

On September 16, 1980, Security Pacific entered into a credit agreement with Cascade Oil Company (Cascade) of which Mr. Kirkland was president and majority stockholder. This revolving note and credit agreement established a $1,250,000 unsecured line of credit from Security Pacific and an additional $200,000 line of credit. The Kirklands also gave Security Pacific an unsecured general continuing guaranty of Cascade's credit line. The guaranty expressly waived all notices and gave Security Pacific the power to substitute, release, decrease, or alter any collateral.

Cascade defaulted on March 31, 1981. On May 20, 1981, Cascade, as part of a workout agreement, gave Security Pacific a security interest in certain of its real and personal property. Security Pacific waived the default through May 29, 1981. The Kirklands, as guarantors, consented to the collateralization of Cascade's loan in a letter agreement dated May 18, 1981. This letter agreement provides that the collateralization of Cascade's loan "does not affect or diminish" the Kirklands obligation under the continuing guaranty of September 16, 1980.[2] Because Security Pacific rejected Cascade's repayment proposal, the Cascade obligation reverted to default status.

Pursuant to a second workout arrangement, Security Pacific agreed to a six-month moratorium on Cascade's obligation and obtained security for the Kirklands' previously unsecured guaranty. In the

---

1. The parties have agreed to many of the following facts in their Joint Pre-trial Statement filed September 24, 1986. Any continuing factual disputes will be noted.

2. The Kirklands note that this letter agreement did not use the words "waiver," "renunciation," or "notice" and makes no other reference to the September 16, 1980 guaranty agreement.

new agreement, dated June 8, 1981, Security Pacific secured the Kirklands' guaranty with a deed of trust on the Kirklands' 2,600 acre and 48 acre California ranches, and with a security interest in Mr. Kirkland's partnership interest in an apartment complex. The agreement also provides that the September 16, 1980 continuing guaranty "shall remain in full force and effect." [3]

At the end of the moratorium, Cascade again failed to make payment and on May 7, 1982 filed a Chapter 11 bankruptcy petition in Wichita, Kansas. Mr. Kirkland subsequently resigned as president.

In August 1983 and September 1983, Cascade's new president sold a premix mud tank for $4,500 and a drilling rig for $55,000, respectively, either with the consent or at the direction of Security Pacific. The Kansas bankruptcy court found these sales to be commercially reasonable. The Kirklands were not given notice of the sales and learned about them after the sales took place.

## PROCEDURAL HISTORY

In January 1985, the Kirklands filed individual Chapter 11 petitions. On May 15, 1985, Security Pacific filed its proof of claim. The Kirklands objected to this claim on the grounds that Security Pacific did not give the Kirklands notice of the sale of collateral and moved for summary judgment.

The bankruptcy court granted the motion holding that guarantors are "debtors" for the purpose of § 9105(1)(d) and therefore entitled to the protections of § 9504(3). As such, the Kirklands, as a matter of law, could not have waived their right to notice prior to default. The court also determined that there was no post-default waiver because the letter agreements subsequent to the initial default constituted a novation of the Kirklands' original obligation. Because no notice was given subsequent to default, the bankruptcy court disallowed the deficiency claim in the amount of $1,303,882.78

---

**3.** Again, the Kirklands note that this letter agreement did not contain the words "waiver,"

plus interest, cost of collection, and attorneys' fees.

On September 22, 1988, the bankruptcy appellate panel issued an opinion upholding the bankruptcy court's order and affirming the grant of summary judgment. *In re Kirkland,* 91 B.R. 551 (Bankr. 9th Cir. 1988). The court held that, even if the letter agreements incorporated the terms of the continuing guaranty by reference, Cascade's repeated failure to make payments constituted separate defaults, not one continuous default. Therefore, the waivers of notice, if any, occurred prior to, not after, the last default. The panel also affirmed the bankruptcy court's decision to disallow Security Pacific's deficiency claim in its entirety. Security Pacific appeals and requests summary judgment on the grounds that guarantors are not entitled to notice, that a guarantor can waive the right to notice prior to default, and that no novation of contract took place. We affirm and deny Security Pacific's request for summary judgment.

## STANDARD OF REVIEW

■ A bankruptcy court's decision to grant summary judgment is reviewed de novo. *In re Two S Corp.,* 875 F.2d 240, 242 (9th Cir.1989). This court must employ the same standard used by the bankruptcy court under Fed.R.Civ.P. 56(c), *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986), and must determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the relevant substantive law when the evidence is viewed in a light most favorable to the nonmoving party. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

■ An interpretation of state law is likewise reviewed de novo. *Matter of McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). When interpreting state law, a federal court is bound by the decision of the highest state court. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th

"renunciation," or "notice."

Cir.1986), *reh'g denied, op. modified*, 810 F.2d 1517 (9th Cir.1987). In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.* at 1482; *Molsbergen v. United States*, 757 F.2d 1016, 1020 (9th Cir.1985), *cert. dismissed*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985). However, " 'in the absence of convincing evidence that the highest court of the state would decide differently,' " *American Triticale, Inc. v. Nytco Services, Inc.*, 664 F.2d 1136, 1143 (9th Cir.1981) (quoting *Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940)), a federal court is obligated to follow the decisions of the state's intermediate courts. *See id.*

## ANALYSIS

### I. *The Definition of Debtors under Commercial Code § 9504(3).*

■ At issue is whether a "guarantor" is a "debtor" for the purposes of § 9504(3). California Commercial Code § 9504(3) requires a secured creditor to notify a debtor in default of the manner in which the creditor will dispose of the collateral unless, after default, the debtor waives this right. Commercial Code § 9504(3) provides in relevant part:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold in a recognized market, the secured party must give to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale, ... a notice in writing of the time and place of any public sale ... any private sale or

other intended disposition ... to be made.[4]

Under Commercial Code § 9501(3), this post-default notice requirement cannot be waived except as provided in § 9504(3). Article Nine defines a debtor as

> the person who owes payment or other performance of the obligation secured, whether or not he or she owns or has rights in the collateral ... Where the debtor and owner of the collateral are not the same person, "debtor" means the owner of the collateral in any provision dealing with the collateral, the obligor in any provision dealing with the obligation and may include both where the context so requires.

Commercial Code § 9105(1)(d).

The California Supreme Court has not decided this issue. However, four California Courts of Appeal have. The three most recently decided cases, relied upon by the bankruptcy appellate panel in its decision and by the Kirklands in this appeal, have held that a guarantor is a debtor for the purposes of Commercial Code § 9105(1)(d) and entitled to the protections of § 9504(3). *See American Nat'l Bank v. Perma–Tile Roof Co.*, 200 Cal.App.3d 889, 246 Cal.Rptr. 381 (1988); *C.I.T. Corp. v. Anwright Corp.*, 191 Cal.App.3d 1420, 237 Cal.Rptr. 108 (1987); *Connolly v. Bank of Sonoma County*, 184 Cal.App.3d 1119, 229 Cal.Rptr. 396 (1986). The oldest decision, the first to decide this issue in California, and the one relied upon by Security Pacific, *Rutan v. Summit Sports, Inc.*, 173 Cal.App.3d 965, 219 Cal.Rptr. 381 (1985), reached the opposite conclusion.[5]

In construing California law, we feel bound by the interpretation adopted by the majority of California appeals courts. We, therefore, hold that for the purposes of § 9105(1)(d) a guarantor is a debtor and is

---

**4.** Although § 9504(3) admits exceptions to its notification requirements, neither Security Pacific or the Kirklands have suggested these exceptions apply. Nor do we believe the facts of this case compel their application.

**5.** Security Pacific attempts to persuade this court that *Krueger v. Bank of America National Trust & Savings*, 145 Cal.App.3d 204, 193 Cal. Rptr. 322 (1983), also should be read to support

its argument that a guarantor is not a debtor for the purposes of § 9504(3). However, *Krueger* made no attempt to define the term debtor or guarantor. Nor have the California appeals courts which have defined the term debtor read *Krueger* so broadly. *See, e.g., Rutan v. Summit Sports, Inc.*, 173 Cal.App.3d 965, 219 Cal.Rptr. 381 (1985).

thereby afforded the notice protections provided in § 9504(3).

Predicting the way in which the California Supreme Court would decide this issue is not an exact science; however, two factors bolster our conclusion. First, the majority of California courts have repudiated the course initially set by *Rutan.* Indeed, in light of these most recent cases, *Rutan* would be a slim reed upon which to rest a contrary decision. Second, these more recent cases have brought California within the majority of states which have determined that a guarantor is a debtor for the purposes of § 9105(1)(d) and afforded the notice protections of § 9504(3). *See Connolly,* 184 Cal.App.3d at 1124, 229 Cal. Rptr. 396 (citing cases); R. Hillman, J. McDonnell, S. Nickles, *Common Law and Equity under the Uniform Commercial Code,* ¶ 26.02[3] n. 42, at S26–7 (1988 Cum. Supp.) (same).

Security Pacific marshalls a series of arguments to dissuade this court from reaching this conclusion. None do so. In addition to citing *Rutan* in support of its argument, Security Pacific notes that this court and another federal court interpreting California law have determined that a guarantor is not protected by § 9504(3). Security Pacific also argues that its position is justified because, in other respects, California statutory law treats debtors and guarantors differently. We address each argument in turn and reject them.[6]

Security Pacific draws to our attention three cases, *United States v. Grayson,* 879 F.2d 620 (9th Cir.1989); *First National Park Bank v. Johnson,* 553 F.2d 599 (9th Cir.1977); and *U.S. on Behalf of Small Business Administration v. Kurtz,* 525 F.Supp. 734 (E.D.Pa.1981), *aff'd without opinion* 688 F.2d 827 (3d Cir.1982), *cert.*

*denied, sub nom. Kurtz v. United States,* 459 U.S. 991, 103 S.Ct. 347, 74 N.E.2d 387 (1982), each of which is readily distinguishable. In *Grayson,* this court was asked to determine the effect of a guarantor's waiver of notice, similar to the one at issue in this case, executed as part of a loan agreement with the United States Department of Commerce's Economic Development Agency. Although federal law governs such transactions, this court looked to California's version of the Uniform Commercial Code for guidance, and held simply that "a guarantor may not defend on the basis of lack of notice to the debtor when the guaranty agreement unambiguously waives notice." *Grayson,* 879 F.2d at 624 (citing *First National Park Bank,* 553 F.2d at 601). Yet, the *Grayson* court did not purport to define the sections of California's Uniform Commercial Code at issue in this case. Nor do we read it as doing so. Moreover, *Grayson* is essentially an instance of federal law making, albeit predicated on state law. *Cf. Great Southwest Life Ins. Co. v. Frazier,* 860 F.2d 896, 899–900 (9th Cir.1988). We find it even less controlling for that reason.

Likewise, neither *Johnson* nor *Kurtz* is dispositive. *Johnson* interprets Montana law and has no application to this case. The validity of the *Kurtz* decision is even more questionable. Not only has *Kurtz* been strongly criticized in its own circuit, *Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996 (E.D.Pa.1982), California appeals courts have recently expressly repudiated it. *See, e.g., C.I.T. Corp.,* 191 Cal. App.3d at 1425–26, 237 Cal.Rptr. 108.

Turning to Security Pacific's next argument, while Security Pacific may be correct in noting that in other aspects of California statutory law, specifically Civil Code §§ 2787–2855, guarantors are treated in a

---

**6.** Security Pacific raises two additional arguments which do not merit full discussion. First, Security Pacific argues that the Kirklands owe it a separate and independent obligation distinct from the one owed it by the debtor, Cascade, and, therefore, cannot be considered a debtor as defined in § 9105(1)(d). This legal rule, however, has been abolished in California. *See Everts v. Matteson,* 21 Cal.2d 437, 132 P.2d 476 (1942). Second, Security Pacific contends that in adopting a stricter version of § 9504(3) the

California legislature could have, but did not, include guarantors within that statute's provisions. California's adoption of a stricter version of § 9504(3) is of no consequence to our decision. In adopting a stricter version of § 9504(3), the California legislature's apparent concern was not who was to be given notice, but the way in which notice should be given. *See Ford Motor Credit Co. v. Price,* 163 Cal.App.3d 745, 749–50, 210 Cal.Rptr. 17, 20–21 (1985).

different manner than debtors, California courts have apparently eschewed the use of this legal template when interpreting California's Uniform Commercial Code. We also so refuse.

We do not write on a blank slate and are compelled to apply the law as we find it interpreted by California courts. Therefore, we find that a guarantor is a debtor as defined in § 9105(1)(d) and afforded the protections of § 9504(3).[7]

## II. *The Effect of the Kirklands' Waiver.*

Based on our resolution of the above issue, we must now determine whether the Kirklands did in fact waive their right to notice after default as required by § 9504(3).[8] In the event that this court found § 9504(3) applicable to guarantors, Security Pacific argued that the Kirklands did, in fact, waive their right to notice after Cascade's default in both their May 18, 1981 and June 8, 1981 letter agreements because both letter agreements incorporate the terms of the Kirklands' original guaranty. In support, Security Pacific argues, without citation, that § 9504(3) requires only that notice be waived "after default," not that the debtor has to be "in default" when notice is waived. Therefore, it contends, because the Kirklands waived their right to notice after March 31, 1981, the date of Cascade's initial default, Security Pacific did not violate § 9504(3)'s notice requirements. Alternatively, Security Pacific contends that the Kirklands should be equitably estopped from claiming their right to notice.

■ Like the bankruptcy appellate panel, we find that Cascade defaulted on three separate occasions. Cascade defaulted in March 1981, again in May 1981, and finally, on September 15, 1981. After each of these defaults, with the exception of September 15, 1981, Security Pacific waived the default and had executed in its favor additional security from both Cascade and the Kirklands. Therefore, even if we assume that the letter agreements of May and June 1981 incorporated the terms of the Kirklands' original guaranty and that § 9504(3) requires only that a debtor waive notice "after default" and not while "in default," Security Pacific violated § 9504(3).

Prior to September 15, 1981, in effect, Cascade had not defaulted because Security Pacific waived default for additional security. As a result, the only waiver of notice that would have been effective would have been one executed after September 15, 1981, the date of the only relevant default. No such waiver exists. Security Pacific thus violated § 9504(3) when it failed to notify the Kirklands of its disposition of Cascade's collateral.[9] We now turn to the appropriate remedy.

## III. *The Absolute Bar Rule.*

■ Traditionally, California courts have disallowed deficiency claims when a creditor fails to adhere to Commercial Code § 9504(3) notice requirements. *See, e.g. American Nat'l Bank v. Perma–Tile Roof Co.*, 200 Cal.App.3d 889, 246 Cal.Rptr. 381 (1988); *Backes v. Village Corner, Inc.*, 197 Cal.App.3d 209, 242 Cal.Rptr. 716 (1987). Security Pacific argues that on the facts of this case the court should not apply the absolute bar rule as the bankruptcy court and the bankruptcy appellate panel did. It contends that the absolute bar rule is meant to prevent unreasonable, not commercially reasonable, dispositions of collateral, particularly when, as here, the guarantors incur no damage.

---

**7.** In its reply brief, Security Pacific urges this court not to apply its decision regarding the notice requirements of Commercial Code § 9504(3) retroactively. This court does not address this issue since it is raised for the first time in the reply brief. *See Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 862 (9th Cir. 1982).

**8.** Both parties assume, as do we, that a default by the debtor is the event used to determine whether a waiver of notice by the guarantor is post-default.

**9.** Given our resolution of this issue, we do not need to address Security Pacific's equitable estoppel argument. Even if misled prior to September 15, 1981, Security Pacific presents no evidence that the Kirklands, after September 15, 1981, led it to believe that they had waived their right to notice.

We find no merit in Security Pacific's argument. California courts consistently have adhered to a simple maxim: "[i]f the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment," *Atlas Thrift Co. v. Horan,* 27 Cal.App.3d 999, 1009, 104 Cal.Rptr. 315, 321 (1972), regardless of the commercial reasonableness of the creditor's conduct. *See, e.g., Backes,* 197 Cal.App.3d at 216–17, 242 Cal.Rptr. 716. Nor do California courts, contrary to Security Pacific's suggestion, allow the creditor's substantial compliance or good faith to mitigate the severity of this remedy. *See Ford Motor Credit Co. v. Price,* 163 Cal.App.3d 745, 210 Cal.Rptr. 17 (1985). Finally, California courts have never required the debtor to show injury. Instead, the burden of proving compliance with Commercial Code § 9504(3) is placed entirely upon the creditor. *See, e.g., Barber v. LeRoy,* 40 Cal. App.3d 336, 115 Cal.Rptr. 272 (1974).

Security Pacific next contends that this absolute bar rule is based upon an erroneous reading of Article Nine's remedial provisions, a California case of little precedential value, and the since overruled case law of other states. This criticism aside, Security Pacific has provided no evidence suggesting that the Supreme Court of California would overrule a remedy adopted by virtually every California Court of Appeal. Nor have we found any. Therefore, absent " 'convincing evidence that the highest court of the state would decide differently,' " *American Triticale, Inc. v. NYTCO Services, Inc.,* 664 F.2d 1136, 1143 (9th Cir.1981) (quoting *Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 467, 61 S.Ct. 336, 337, 85 L.Ed. 284 (1940)), this court is bound to accept the absolute bar rule.

## CONCLUSION

We affirm the bankruptcy court's and the bankruptcy appellate panel's conclusion that a guarantor is a debtor for the purposes of § 9105(1)(d) and afforded § 9504(3)'s notice protections. We also affirm the bankruptcy appellate panel's conclusion that the Kirklands did not waive notice after default as required by § 9504(3). Finally, we affirm the bankruptcy court's and the bankruptcy appellate panel's use of the absolute bar rule as a remedy for violations of § 9504(3). For the foregoing reasons, Security Pacific's request for summary judgment is denied.

AFFIRMED and DENIED.