UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-50151
Summary Calendar
_____


IN THE MATTER OF: BILLY R. SHURLEY;
JANE BRYANT SHURLEY,

                                                        Debtors.

WILLIAM H. ARMSTRONG, II,

                                                        Appellant,

                              versus

TEXAS COMMERCE BANK, formerly known as
Texas Commerce Bank - Austin, N.A.,

                                                        Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(MO-96-CV-141)
_____

March 11, 1998

Before JONES, SMITH, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

        Appellant William H. Armstrong, II trustee, represents a
creditor of the Estate of Billy R. and Jane Bryant Shurley, Chapter
7 debtors since 1992.  Armstrong contested the claim of Texas
Commerce Bank N.A. (TCB) for a deficiency arising from their

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

guarantees of promissory notes owed by EX-IM Freezer Joint Venture, in which Billy R. Shurley had been a partner. After some procedural ping-pong in the courts below, the district court affirmed a bankruptcy court judgment overruling Armstrong's objections. On appeal in this court, Armstrong contends (1) that the lower courts erred in their construction of the term "default" in the underlying loan agreement between EX-IM and TCB; (2) that even if default originally occurred on April 28, 1989, EX-IM's late payment of this installment cured any default; (3) that Mr. and Mrs. Shurley did not effectively waive their right to notice of a foreclosure sale pursuant to § 9.504(c) of the Texas Uniform Commercial Code; and (4) that the Shurleys' Chapter 7 trustee was entitled to notice of the foreclosure sale. We affirm the judgments of the district and bankruptcy courts.

The background facts, recited in the district court's opinion, may be briefly summarized. As of December, 1988, EX-IM owed TCB $9 million principal, borrowed over a period of years but evidenced by a loan agreement, security agreements, assignments and the guarantees at issue here, dated December 1, 1988. No later than May 31, 1989, the Shurleys executed guarantees which were made "effective" as of December 1, 1988. EX-IM failed to make timely monthly loan payments due on April 28 and May 28, 1989. Although EX-IM caught up these payments in August, 1989, it never became current on the obligations under the loan agreement.

On August 10, 1990, TCB sent written notice to Ex-Im that it was behind in its payments. In 1992, the Shurleys filed a

2

Chapter 7 bankruptcy.  In 1993, TCB foreclosed its lien on the collateral for the obligation owed by EX-IM.  While TCB gave the Shurleys advance notice of this public foreclosure sale, it did not so notify their Chapter 7 trustee.

Texas law provides that if a creditor undertakes to sell collateral after default on a debt, he must reasonably notify any debtor, including a guarantor, of the time and place of a sale or the date after which sale may occur unless the debtor "has . . . signed after default a statement renouncing or modifying his right to notification of [a commercially reasonable] sale." Texas Bus. & Comm. Code § 9.504(c) (1991).[1]  Two assertions are critical to Armstrong's appeal.  First, he contends that the TCB loan was not in default because of EX-IM's failure to make timely payments on April 28 and May 28, 1989.  Second, he asserts that the Shurleys' waiver was not effective <u>after</u> the dates of default because it was made "effective" as of December 1, 1988, and it was not sufficiently specific as a waiver.

The bankruptcy and district courts held against Armstrong's contentions, and we concur.  The lower courts concluded

---

[1]U.S.C. § 9.504(c).  In pertinent part:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if <u>he has not signed after default a statement renouncing or modifying his right to notification of sale</u>.

that EX-IM defaulted in its payments on April 28 and May 28 and that the guarantees, executed approximately May 31, post-dated the default as required by § 9.504.  These findings are correct.

Armstrong contends that the loan did not fall into default for non-payment until ten days after a payment was due and written notice was communicated from the lender to EX-IM.  Although the December 1, 1988 loan agreement describes a non-payment "event of default" in the terms described by Armstrong, the loan agreement specifically distinguishes between a default and an "event of default."  Section 6.1(a) of the Loan Agreement.  As explained in the "definitions" section of the agreement, an event of default means an event specified in § 6.1 "provided that there has been satisfied or met any requirement or condition specified in this agreement for the giving of notice . . .", while "default shall mean any of the events specified in such section, whether or not any other requirement or condition has been satisfied or met." (emphasis added) Section 1.1 of Loan Agreement.  The occurrence of non-payment of an installment on its due date was thus a default under the loan agreement.

Armstrong also contends that the April 28 and May 29 defaults were "cured" when EX-IM made late payments in August of that year.  *Security Pacific National Bank v. Kirkland*, 915 F.2d 1236, 1241 (9th Cir. 1990).  If the made-up payments had actually cured EX-IM's default, this argument might be persuasive. Armstrong does not, however, rebut the testimony of a TCB executive

4

that notwithstanding these payments, the default on the loan to EX-IM was never again cured.

The lower courts also correctly rejected Armstrong's argument that the guarantees took effect pre-default. Because the Texas U.C.C., at § 9.504(c), states only that debtors must <u>sign</u> the waiver of notice of a foreclosure sale after default, the guaranty executed on May 31, 1989 clearly fulfilled that requirement. Armstrong would have this court hold that the "effective" date of the guarantees (six months earlier) is controlling, but to do so contradicts the express language of the statute. Further, as appellee points out, if the statute said that a waiver need only be "effective" after default, a lender could easily circumvent the notice provision by requiring its borrower to agree prior to default that a waiver would be "effective" at a later date.

Armstrong also contends that the Shurleys' waiver of § 9.504(c) notification is not specifically contained in their guarantees. On the contrary, we agree with the implicit findings of the bankruptcy and district courts that the wording of the guarantees is broad enough to have effected such a waiver. Texas law underscores that "[t]his provision of § 9.504(c) has been strictly construed to require a specific, knowing waiver of the right to notice." *All Valley Accept. Co. v. Durfey*, 800 S.W.2d 672, 675 (Tex. Ct. App. – Austin 1990). One of the Shurleys' guarantees stated:

> [t]he obligations, covenants, agreements and
> duties of Guarantors under this Guaranty shall
> in no way be affected or impaired by reason of
> the happening from time to time of any of the

5

following with respect to the Loan Documents, <u>without the necessity of any notices to</u>, or further consent of, either Guarantor:

* * * * *

(g) The voluntary or involuntary liquidation, dissolution, sale of any collateral, . . .

* * * * * (emphasis added).

Although this language is embedded among several provisions generally waiving or limiting the guarantors' rights, it specifically absolves the bank of providing notice of the sale of any collateral. Because this guarantee was signed by the Shurleys after EX-IM's default, it was sufficient to conform to the requirements of § 9.504(c).

Finally, because the Shurleys executed valid post-default renunciations of their right to notice of foreclosure sale of TCB's collateral, they had no further interest in notification that could be transferred to their Chapter 7 trustee nearly two years later. The trustee, who steps into the shoes of the debtor, was bound by the Shurleys' pre-petition waiver of notice. *See, e.g., In re: Wey*, 827 F.2d 140, 142 (7th Cir. 1987).

For the foregoing reasons, the judgments of the lower courts are <u>AFFIRMED</u>.