**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ROSS DRESS FOR LESS, INC., a
Delaware corporation,

        Plaintiff-counter-
        defendant-Appellant,

  v.

MAKARIOS-OREGON, LLC, an Oregon
limited liability company,

        Defendant-counter-claimant-
        Appellee,

 and

WALKER PLACE, LLC, an Oregon
limited liability company; et al.,

        Defendants.

No.   21-35106

D.C. No. 3:14-cv-01971-SI

MEMORANDUM[*]

ROSS DRESS FOR LESS, INC., a
Delaware corporation,

        Plaintiff-counter-
        defendant-Appellee,

No.   21-35132

D.C. No. 3:14-cv-01971-SI

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

WALKER PLACE, LLC, an Oregon
limited liability company,

Defendant,

and

CHARLES W. CALOMARIS; et al.,

Defendants-Appellants,

MAKARIOS-OREGON, LLC, an Oregon
limited liability company,

Defendant-counter-claimant-
Appellant.

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 10, 2022
Portland, Oregon

Before:  TALLMAN and CHRISTEN, Circuit Judges, and BLOCK,[**] District
Judge.

Plaintiff-appellant/counter-defendant-appellee Ross Dress for Less, Inc. and

defendant-appellee/counter-plaintiff-appellant Makarios-Oregon, LLC appeal the

---

[**]   The Honorable Frederic Block, United States District Judge for the
Eastern District of New York, sitting by designation.

district court's judgment awarding $2.9 million in damages to Makarios for its claims arising from Ross's breaches of its lease of the Richmond Building in Portland, Oregon. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.[1] Because the parties are familiar with the facts of this case, we do not recite them here.

We review de novo the district court's interpretation of relevant lease provisions and review for clear error the district court's factual findings. *See OneBeacon Ins. Co. v. Hass Indus. Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011). Because the district court's jurisdiction was based on diversity of citizenship, Oregon substantive law governs, *see Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003), and we are bound by decisions of the Oregon Supreme Court, *see In re Kirkland*, 915 F.2d 1236, 1238–39 (9th Cir. 1990). When there is no Oregon Supreme Court decision on point, we "must predict how the highest court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* at 1239.

1. Ross first argues the district court erred by failing to apply issue preclusion to Makarios's counterclaims related to Section 16.01 of the lease.

---

[1] We address the issue of Makarios's withdrawn jury demand in a concurrently filed opinion.

"Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Util. Dist.*, 862 P.2d 1293, 1296 (Or. 1993). Although a state court ruled on Ross's performance pursuant to Section 7.01 of the lease during the forcible entry and detainer action that Makarios filed against Ross, that proceeding pertained to Ross's obligations *during* its lease term, not Ross's surrender obligations pursuant to Section 16.01. The state court did not rule on the identical issues being litigated here, nor did Makarios have an opportunity to be heard on those issues. *See id.* at 1296–97. The district court did not err in rejecting Ross's issue preclusion arguments.

2. Next, Ross contends the district court erred when it declined to award diminution-in-value damages pursuant to the economic waste doctrine for Ross's failure to perform its contractual repair, restoration, and separation obligations at the end of the lease. Although Ross does not appear to challenge the district court's conclusion that Ross materially breached the lease, it argues the district court's measure of damages was error.

Pursuant to Oregon's economic waste doctrine, an injured plaintiff (or counter-plaintiff) in a contractual dispute usually recovers the "cost of repair" to remedy the defect caused by the defendant's (or counter-defendant's) breach.

4

*Montara Owners Ass'n v. La Noue Dev., LLC*, 353 P.3d 563, 571 (Or. 2015).

"However, Oregon courts use an alternative measure of damages—the diminution in the market value of the property—when the cost of repair is not 'the prudent remedy to apply' because that remedy would create 'economic waste.'" *Id.* (quoting *Turner v. Jackson*, 11 P.2d 1048, 1053 (Or. 1932)). Diminution-in-value damages comprise the difference between the value of the leased property after the defendant's breach and the value of the leased property upon full compliance with the lease's terms. *Id.*

Here, the district court concluded that Ross could not "receive the benefit of the economic waste doctrine" because it did not meet its burden of producing sufficient evidence of diminution in value. *See, e.g.*, *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 798 P.2d 799, 802 (Wash. 1990) (explaining "[t]he plaintiff must come forward with evidence on only one of the measures of damages and then the burden of production shifts to the defendant to present evidence that the other measure of damages is less"). Ross's position was that none of Makarios's repair, restoration, and separation costs would result in any value to the property because post-lease evidence suggested a prudent landlord would not actually undertake such alterations and repairs. But Ross offered only a "conclusory assertion" that the separation offered no value if the Richmond and Failing Buildings were

5

commonly owned. At the conclusion of Ross's lease, the buildings were not commonly owned, and Ross did not provide evidence comparing the fair market value of the Richmond Building as it stood on September 30, 2016 with its estimated fair market value if Ross had fulfilled its separation obligations and *without assuming common ownership.* Likewise, Ross offered only a "conclusory assertion" that the repairs that were needed to comply with Section 16.01 offered no value. We agree with the district court that Ross failed to meet its burden to invoke the economic waste doctrine. The district court did not err in awarding repair, restoration, and separation costs to Makarios.

3. Last, Ross challenges the district court's calculation of prejudgment interest, arguing the amount of damages was not readily ascertainable and that, even if it were, the district court should have applied the contractual prejudgment interest rate of six percent, not Oregon's statutory rate of nine percent.[2] Makarios argues Ross waived this issue because Ross did not raise it in the district court. "A district court's award of pre- and post-judgment interest is reviewed for abuse of discretion." *Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998).

---

[2] Pursuant to Section 82.010(1)(a) of Oregon's Revised Statutes, Oregon courts apply a prejudgment interest rate of nine percent, unless the parties have agreed to another rate.

Generally, we will not consider issues raised for the first time on appeal. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992). Although there is "no 'bright line rule'" for determining whether a party properly raised an issue below, the general rule "is that the argument must be raised sufficiently for the trial court to rule on it," thus giving the district court the opportunity to "reconsider its rulings and correct its errors." *Id.* (quoting *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989)). Makarios requested prejudgment interest in its counterclaims against Ross, and it continually urged the district court to use the statutory rate of nine percent. Ross's answer generally denied all requests and allegations within Makarios's prayer for relief, but Ross never challenged the nine-percent interest rate until it filed an opposition to Makarios's motion for attorney's fees. That filing came *after* the district court entered its post-trial final judgment and *after* Ross filed its Notice of Appeal in this court.

Ross had several opportunities to argue the rate of prejudgment interest in the district court, but it did not afford the district court a sufficient opportunity to rule on this issue. Therefore, we affirm the district court's calculation of prejudgment interest. *See Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014) (declining to consider "whether prejudgment interest and postjudgment interest awards in Sarbanes-Oxley cases must be based on the same

7

interest rate" because, although the district court awarded prejudgment interest, appellant "failed to raise this issue before the district court").

4. In its cross-appeal, Makarios first contends the district court erred by denying recovery for Ross's changes to the occupancy level of the basement because Section 9.01 of the lease required the landlord's written consent. This argument fails because the district court ruled that the statute of limitations expired on claims arising out of Section 9.01, and Makarios does not challenge that ruling.

The district court ruled that Makarios impliedly consented to the changes to the basement because the Calomiris family did not object to them until this litigation ensued, despite objecting to other conditions in the building throughout the term of the lease. There is no Oregon caselaw dealing with the specific doctrine of implied consent that the district court applied. *See Kirkland*, 915 F.2d at 1239 (explaining where there is no state-court precedent on point, a federal court sitting in diversity "must predict how the highest state court would decide the issue using . . . decisions from other jurisdictions, statutes, treatises, and restatements as guidance"). The doctrine is well-supported by decisions from other jurisdictions, *see, e.g.*, *Coleman v. Regions Bank*, 216 S.W.3d 569, 576 (Ark. 2005); *Lamonica v. Bosenberg*, 389 P.2d 216, 218 (N.M. 1964), and a treatise on landlord and tenant law is in accord with the cases that the district court found persuasive, *see* 52A

8

C.J.S. Landlord & Tenant § 963 (May 2022) (explaining that a tenant may be held liable for alterations made without the landlord's consent). We affirm the district court's implied consent ruling.

5. Next, Makarios contends the district court erred by concluding that the Oregon Supreme Court would apply the economic waste doctrine because Ross intentionally breached the lease. The district court did not make a finding regarding intent, and even if it had, no Oregon Supreme Court caselaw suggests that Oregon courts consider a breaching party's intent when deciding whether to apply the economic waste doctrine. *See, e.g.*, *Beik v. Am. Plaza Co.*, 572 P.2d 305, 310–12 (Or. 1977) (declining to award diminution in value damages but making no finding regarding whether the breach was intentional).

6. Last, Makarios challenges the district court's ruling that a reasonable and prudent landlord would not spend $450,000 to install a second freight elevator, $340,000 to repair the plumbing on the upper floors, and $274,420 to repair the air conditioning on the third floor. Makarios argues Oregon's version of the economic waste doctrine does not impose a reasonableness burden on the landlord.

The district court's explanation for these line items of costs is subject to more than one interpretation. On one hand, the district court unequivocally expressed that it was not relying on the economic waste doctrine, but a footnote in

9

its order suggests that it may have used the language of the economic waste doctrine to fault Makarios for not proving that a reasonable and prudent landlord would make certain repairs. On the other hand, the district court may have intended to rely upon the general burden Makarios bore as counter-plaintiff, to come forward with the costs of repair Ross owed pursuant to its end-of-lease obligations. A landlord's burden to recover end-of-lease damages includes "showing the specific item of damage and the reasonable costs of repairing the items of damage that are within the scope of the tenant's covenant." Milton R. Friedman, 6 FRIEDMAN ON LEASES § 18:1 at 18–24 (June 2021). It is unclear whether the district court relied on the economic waste doctrine or on Makarios's general burden as counter-plaintiff and landlord when it declined to award damages for the freight elevator, plumbing on the upper floors, and air conditioning on the third floor.

We reverse and remand for the district court to clarify its ruling as to those three line items, but we affirm in all other respects.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART. The parties shall bear their own costs.**