**John G. WATERBURY and Marcia L. Waterbury, Plaintiffs-Appellants,**

v.

**T.G. & Y. STORES COMPANY, a corporation, Blue Corporation, and Does 1–10, inclusive, Defendants-Appellees.**

No. 86–1532.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1987.

Decided July 1, 1987.

Wendell W. Clark, Tulsa, Okla., for plaintiffs-appellants.

William J. Coyne, Sacramento, Cal., for defendants-appellees.

Before SNEED, ALARCON and CANBY, Circuit Judges.

ALARCON, Circuit Judge:

John G. Waterbury and Marcia L. Waterbury (the current owners and landlords)

appeal from the district court's order granting summary judgment in favor of T.G. & Y. Stores Company (T.G. & Y.), the current subtenant. The Waterburys present two issues for our review:

One. Whether the district court's *sua sponte* action in granting summary judgment against them during argument on their motion for a summary judgment denied them a full and fair opportunity to make a showing and present argument in opposition to the entry of the adverse order?

Two. Whether the district court erred in determining that no disputed issue of material fact exists based on its interpretation of the lease agreement's provisions regarding the amount of rent to be paid by a subtenant?

We affirm because we have concluded that the district court did not err on its interpretation of the lease. We discuss each issue and the facts pertinent thereto under separate headings.

## I

### SUA SPONTE GRANT OF SUMMARY JUDGMENT

The Waterburys contend that the district court's *sua sponte* grant of summary judgment denied them a "full and fair opportunity to ventilate the issues involved in the motion." We disagree.

█ In *Cool Fuel Inc. v. Connett*, 685 F.2d 309 (9th Cir.1982), we held that a district court may grant a summary judgment *sua sponte* if the losing party "had a full and fair opportunity to ventilate the issues involved in the motion." *Id.* at 312. The record shows that the Waterburys had a full and fair opportunity to present their arguments on the proper interpretation of the lease and to make a showing that a material fact was in dispute.

The Waterburys commenced this action by filing a complaint for declaratory relief for interpretation of the lease, for damages for breach of contract, and for ejectment. The action was removed to the district court. The Waterburys filed a motion for a summary judgment in which they asserted that there was no dispute as to any material fact. They presented affidavits explaining their intent in drafting the provisions of the lease pertaining to the rent payable by a subtenant. After listening to argument, the district court denied the motion and instead announced that it was prepared to enter summary judgment *sua sponte* for T.G. & Y. Prior to making its order, however, the court gave the Waterburys an opportunity to exercise their right to notice and to demand a hearing. The court advised counsel for the Waterburys as follows:

> COURT: ... case law cautions us to make sure that there is notice to the other side when this reciprocal-type of summary judgment is entered or on oral motion for summary judgment. So, if you'll waive notice, I'll end the case right now so you can take it to the next higher court if that's your desire.

Mr. Wendell W. Clark, counsel for the Waterburys replied, "So waived" to the court's admonition concerning his right to notice. Under the circumstances presented in this case, the Waterburys had a full and fair opportunity to present their theory of the proper interpretation of the lease and voluntarily waived the right to present further argument or to make an additional factual showing.

## II

### AMOUNT OF RENT PAYABLE BY A SUBTENANT UNDER THE LEASE AGREEMENT

The parties disagree as to the amount of rent payable by a subtenant under the terms of the commercial lease agreement entered into on October 10, 1958 between the original owners, Erickson Investment Company and Faith Ventures Inc., and the original tenant, W.T. Grant Company (Grant). The lease was amended on March 20, 1961 to provide for a base rent of $18,250 per year ($1,520.83 per month) plus percentage rent in the amount of three

percent (3%) of the gross sales in excess of $608,333.[1]

The lease contains two provisions that refer to the payment of rent by a subtenant. Paragraph 12a provides that Grant may assign or sublet the leased premises without the consent of the landlords. The tenant remains liable, however, for the payment of rentals in the event that the premises are vacated, assigned or subleased.[2] Paragraph 4(c) of the agreement provides as follows:

Should the Tenant ... assign or sublet this lease or sublet all of its store premises ... then the average monthly percentage rent paid for the twenty-four (24) months (or for the lesser period of occupancy if the premises have not been occupied for twenty-four (24) months) preceding such event shall be taken as the monthly rate of percentage rent payable thereafter, subject to abatement as elsewhere provided.

Grant assigned its interest in the lease to T.G. & Y. on September 4, 1969. The average monthly percentage rent paid by Grant for the twenty-four months preceding the assignment to T.G. & Y. was $451.54. T.G. & Y. has paid the base rent of $1,520.83 and the percentage rent of $451.54 since the effective date of the assignment.

On October 1, 1984, the Waterburys demanded that T.G. & Y. pay three percent of its own gross sales in excess of $608,333.00 per year. T.G. & Y. refused. Thereafter, the Waterburys filed this action.

The Waterburys argue that the district court erred in construing the terms of paragraph 4c regarding percentage rent without considering the provisions of paragraph 12a which address the continuing liability of the tenant after an assignment. They ask us to construe paragraph 4c as a "cap" on the original tenant's liability—not on the amount of percentage rent payable by a subtenant.

Summary judgment is appropriate in an action involving the interpretation of an agreement if its terms are unambiguous. *National Union Fire Ins. Co. of Pennsylvania v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983). If the terms of an agreement are ambiguous, then the intent of the parties may raise a "genuine issue of material fact as to the contract's proper interpretation." *Id.*

We have reviewed the lease agreement in its entirety. The terms of the lease in respect to the payment of rent are quite specific and unambiguous. California Civil Code section 1638 (West 1985) provides that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." The Waterburys do not contend that the lease agreement is ambiguous. They argue instead that giving paragraph 4c a literal interpretation without regard to the assignment clause "is to create an extraordinarily harsh and unjust result." Appellant's Opening Brief, page 9. We are told that the lease makes good sense only if we construe the agreement as reflecting "the intent of the parties to have the rental adjust automatically as a percentage of 'gross sales'." Appellant's Opening Brief, page 8. The lease does not contain any language that permits this construction. Paragraph 4c expressly limits the percentage rent upon assignment of the lease to the average monthly percentage rate for the *preceding* twenty-four months. We cannot redraft the lease simply because the original landlord may have made an unwise bargain. *Renner v. Huntington-Hawthorne Oil & Gas Co.*, 39 Cal.2d 93, 100, 244 P.2d 895, 900 (1952); *Beverly Hills v. Albright*, 184 Cal.App.2d

---

1. Paragraph 7, which contains the rental terms, provides in pertinent part:

    ... the annual fixed rent payable pursuant to the provisions of Section 4, (a) of the Lease Agreement shall be increased to EIGHTEEN THOUSAND TWO HUNDRED FIFTY DOLLARS ($18,250.) and the "minimum sales base" set forth in Section 4.(b) of said Lease Agreement shall be increased to SIX HUN- DRED EIGHT THOUSAND THREE HUN- DRED THIRTY–THREE DOLLARS ($608,- 333.).

2. Paragraph 12(a) provides in pertinent part:

    The Tenant ... may vacate or sublet all or any part of them or assign the Lease, but the Tenant shall not thereby be relieved of any liability hereunder.

562, 570, 7 Cal.Rptr. 706, 711 (1960). Furthermore, the agreement as drafted by the parties does not lead to an absurd, harsh or unjust result. It guarantees the landlord a certain rent should the original tenant assign or sublet the premises. It benefits the original tenant by permitting an assignment to be made with a fixed percentage of sales rental payment. Without the limitation contained in paragraph 4c, the original tenant would be exposed to uncertain and unlimited liability should the subtenant fail to pay rent.

The district court did not err in granting summary judgment *sua sponte*. There were no material issues of fact in dispute. The lease agreement was fair, clear and unambiguous when construed in its entirety.

AFFIRMED.