**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**John N. GRAYSON; Dorothy L.
Grayson, Defendants–Appellants.**

**No. 88–5733.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1989.

Decided July 6, 1989.

Mary Fabre LeVine, Cappello & Foley, Santa Barbara, Cal., for defendants-appellants.

Carolyn M. Reynolds, Asst. U.S. Atty., Deputy Chief, Civ. Div., Los Angeles, Cal., and Stephen M. Booth, Staff Atty., U.S. Dept. of Commerce, Washington, D.C., for plaintiff-appellee.

Before FLETCHER and KOZINSKI, Circuit Judges, JENSEN, District Judge.[*]

KOZINSKI, Circuit Judge:

### I

The United States Department of Commerce's Economic Development Agency (EDA) entered into an agreement to loan $2 million to Univox–California, Inc.[1] John L. Grayson, president and sole shareholder of Univox, and his wife Dorothy Grayson, executed an unconditional guaranty of the entire loan.

Univox failed to make any installment payments on the loan after July 1985. On February 25, 1986, EDA notified Univox that it was accelerating the note and demanding immediate repayment. A week later, EDA made a formal demand on the Graysons as guarantors for payment of all amounts due on the note.

Because the Graysons failed to honor this demand, the EDA, in August 1986, filed suit against them in district court. After protracted procedural wrangling,[2] the district court granted the Graysons' motion for leave to file an amended answer and counterclaim. At the same time, it granted EDA's motion for summary judgment.

### II

A. The Graysons argue that the district court erred in granting summary judgment in favor of EDA because their first amended answer and counterclaim raise genuine issues of material fact regarding EDA's right to recover on the Graysons' guaranty and the Graysons' right to recover damages from EDA. A material fact is one that is relevant to an element of a claim or defense, and whose existence might affect the outcome of the case. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). In considering the Graysons' claims, we apply federal law but, as

---

[*] The Honorable D. Lowell Jensen, United States District Judge for the Northern District of California, sitting by designation.

1. The loan was designed to assist Univox in manufacturing reverse osmosis water purifying units pursuant to a contract between Univox and the Small Business Administration. These units were manufactured for sale to the United States Army; the Army's payments to Univox were administered by the Defense Contract Administration Services Region, Los Angeles (DCASR).

2. The Graysons filed an answer to EDA's complaint on November 24, 1986. EDA moved for summary judgment on July 2, 1987. The Graysons responded by filing a first amended answer and a cross-complaint. After EDA moved to strike the Graysons' amended answer and cross-complaint, the Graysons moved for leave to file an amended answer and cross complaint, filed a reply to EDA's motion to strike, an opposition to EDA's motion for summary judgment, and a statement of controverted facts. EDA then replied to the Graysons' opposition to the motion for summary judgment, first amended answer and counterclaims. In response, the Graysons filed another reply.

the events which gave rise to this case took place in California, we look to that state's version of the Uniform Commercial Code for guidance. *See Great Southwest Life Ins. Co. v. Frazier*, 860 F.2d 896, 899–900 (9th Cir.1988).

The Graysons proffer essentially two sets of facts that, they claim, would have been resolved in their favor, had they been allowed to proceed to trial. First, they contend that, after EDA notified Univox that it was accelerating the loan and demanded the Graysons make good on their guaranty, the vice president of Univox warned EDA that any action to collect on the loan might destroy Univox. The Graysons also claim that, in response to these warnings, EDA officials repeatedly assured Univox that the EDA did not intend to collect the amount Univox owed, and that it stood willing to negotiate with Univox to develop a deferred repayment schedule. Second, the Graysons point out that, in general, EDA has a lenient collection policy. In this case, however, EDA refused to provide any written assurance that it would not take steps to collect on the loan, and the parties ultimately failed to agree on a deferred repayment plan. The Graysons attribute the EDA's intransigence to the institution of a new incentive plan for senior EDA collection officials. Pursuant to this plan, the responsible EDA official received a performance bonus of $5000 following collection of $1 million from Univox. The collection effort left Univox insolvent, rendering performance of the contract, and hence repayment of the loan, impossible.

The Graysons attempt to build a series of legal theories on these factual allegations. In considering these theories, we accept the Graysons' proffered facts as true for purposes of this appeal. *T.W. Elec. Serv., Inc.*, 809 F.2d at 631.

■ The Graysons' first theory is that the EDA did not accelerate the loan in good faith as required by California Commercial Code section 1208. Under this section, when an acceleration clause permits a party to accelerate payments "at will" or "when he deems himself insecure," the party may accelerate "only if he in good faith believes that the prospect of payment or performance is impaired." Cal.Com.Code § 1208 (West 1964).[3] The Graysons argue that the responsible EDA official accelerated the Univox loan in order to earn a performance bonus, and not out of a good faith belief that EDA's prospect of being repaid was impaired. At least, they claim, a rational trier of fact could so conclude.

The record, however, presents overwhelming evidence supporting EDA's good faith belief that Univox would be unable to repay the promissory note. After failing to pay the installment due August 1985, Univox advised EDA that it would have difficulty making any further payments. In fact, EDA waited 11 months before it sued the Graysons, during which time Univox failed to make any additional payments. Furthermore, Univox's financial statements, sent to EDA on March 10, 1986, showed a projected net loss of over $3.5 million for the year ending December 1985. The Graysons did not dispute these facts nor did they present any substantial evidence suggesting that Univox's financial condition (as known by EDA) was less dire. On this record, no rational trier of fact could conclude that EDA lacked a good faith belief that the "prospect of payment or performance [was] impaired." Cal.Com. Code § 1208.[4]

■ ■ The Graysons also allege that EDA's acceleration was wrongful because EDA failed to give Univox adequate notice or a reasonable opportunity to seek outside

**3.** We have interpreted this provision as also applying to clauses permitting acceleration of payments after the party has defaulted. *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367, 1378–90 (9th Cir.1979). Here, the promissory note between Univox and EDA permitted EDA to accelerate the loan upon Univox's default. Univox defaulted by failing to make any payment on its note after July 1985.

**4.** As EDA's decision to accelerate was supported by objective business-related considerations, it is irrelevant that the responsible EDA collection official may have also been motivated by the desire to earn a performance bonus.

financing. However, in their guaranty agreement, the Graysons waived the right to notice of default and granted EDA the power "in its uncontrolled discretion and without notice to the undersigned" to accelerate the loan. We have held that a guarantor may not defend on the basis of lack of notice to the debtor when the guaranty agreement unambiguously waives notice. *First Nat'l Park Bank v. Johnson*, 553 F.2d 599, 601 (9th Cir.1977).

■ Finally, the Graysons attempt to make out a case of waiver and estoppel based on its course of dealing with Univox. Specifically, the Graysons point to EDA's assurances that it would not proceed against Univox and its generally lenient collection policy. However, this theory is defeated by the promissory note, which provides that the delay or failure of EDA to exercise its option to accelerate "shall not be construed as a waiver thereof by the Holder, nor shall the Holder be prohibited from exercising its option at any time during which this Note is in default." Under California law, the terms of the note prevail over any course of dealing between the parties or any usage of trade which might otherwise supplement or qualify the terms of an agreement. Cal.Com.Code § 1205(4) (West 1964). Given the language of the note and the EDA's refusal to execute a writing waiving its rights, no evidence the Graysons might present could establish waiver or estoppel.

■■ As the Graysons will be unable to establish that EDA's acceleration of the note was wrongful, those of their claims which depend on a finding of wrongful acceleration must also fail. Thus, no rational trier of fact could find in favor of the Graysons on the grounds that the EDA's actions breached the covenant of good faith and fair dealing, interfered with the economic relationship between Univox and the Graysons or exonerated them from liability under California Civil Code section 2819.[5]

■ Nor did the facts adduced by the Graysons support a claim that the EDA's actions rendered Univox's performance pursuant to the loan agreement impossible, or frustrated the purpose of the loan agreement. Both of these doctrines are entirely inapplicable to this fact situation. As "[t]he duty of a promisor is never discharged ... by the mere fact that supervening events deprive him of the ability to perform, if they are not such as to deprive other persons, likewise, of ability to render such a performance," 6 A. Corbin, *Corbin on Contracts* § 1332 at 361 (2d ed. 1962) (footnote omitted), the Graysons have no basis for raising impossibility of performance as a defense. Although the Graysons were unable to discharge their duty under the guaranty agreement, it was not because payment to the EDA of the amounts due was objectively impossible.

■ Likewise, the frustration of purpose doctrine is only applicable when "a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 265 (1981). In this case, the Graysons' principal purpose in signing the guaranty agreement was to induce EDA to loan $2 million to Univox. As EDA performed its part of the bargain, the Graysons cannot claim that their purpose was substantially frustrated. Furthermore, because the promissory note provided for acceleration upon default, the Graysons cannot claim that the non-occurrence of acceleration "was a basic assumption on which the contract was made." *Id.*[6]

---

5. Furthermore, the Graysons waived any defense they might have had under Cal. Civil Code § 2819 by granting the EDA "full power to deal in any manner with the liabilities or the collateral," as stated in their guaranty agreement. *See American Security Bank v. Clarno*, 151 Cal. App.3d 874, 884, 199 Cal.Rptr. 127, 133 (1984).

6. The Graysons raised an additional theory for the first time at oral argument. After claiming that Univox was unable to make loan payments to EDA because DCASR had wrongfully delayed making payments owed to Univox, counsel for the Graysons argued that one arm of government may not accelerate a loan after another arm of government had wrongfully prevented the debtor from making the loan payments. However, the record contains no evidence supporting the Graysons' claim that DCASR's ac-

The facts advanced by the Graysons, coupled with undisputed background facts, are not "such that a rational [trier of fact] might return a verdict in its favor based on that evidence." *T.W. Elec. Serv.*, 809 F.2d at 631. Therefore, the Graysons' affirmative defenses and counterclaims cannot withstand a motion for summary judgment.[7]

■ B. The Graysons also argue that the district court erred in barring their counterclaim and granting EDA's motion for summary judgment on the grounds of collateral estoppel. There is nothing in the record to suggest that the district court's ruling was based on collateral estoppel. To the contrary, the court repeatedly disavowed any reliance on collateral estoppel in reaching its decision. Puzzled somewhat by the Graysons' persistence in the face of the district court's clear statements to the contrary, we reject this claim as well.

■ ■ C. Finally, the Graysons argue that because the EDA moved for summary judgment only on its own complaint, the district court erred in also dismissing the Graysons' counterclaim.[8] As a general rule, a district court may not sua sponte grant summary judgment on a claim without giving the losing party ten days' notice and an opportunity to present new evidence as required by Federal Rule of Civil Procedure 56(c). There is an exception to this rule, however: A district court may grant summary judgment without notice if the losing party has had a "'full and fair opportunity to ventilate the issues involved in the motion.'" *Waterbury v. T.G. & Y. Stores Co.*, 820 F.2d 1479, 1480 (9th Cir. 1987) (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.1982)).

■ Here the Graysons' counterclaim raises precisely the same theory of wrongful acceleration that undergirds their affirmative defenses. The Graysons developed the facts supporting their theories not only in their amended answer and cross-complaint, but also in their motion for leave to file an amended answer and cross-complaint, their reply to EDA's motion to strike, their opposition to EDA's motion for summary judgment, and their statement of controverted facts, filed at the same time as the counterclaim. *See* note 2 *supra.* After the EDA filed its reply to the Graysons' pleadings, the Graysons had yet another opportunity to develop their factual contentions in their response filed December 3, 1987.

Our review of the record shows that the Graysons had a full and fair opportunity to ventilate the issues raised in their counterclaim and, in fact, developed their factual allegations and legal theories at great length. Furthermore, the Graysons fail to indicate what other evidence or argument they might have raised had the court given them additional time to respond. Under these circumstances, we conclude that the district court did not err in disposing of the entire case after determining that the EDA was entitled to summary judgment.

Conclusion

Although the Graysons have advanced several theories, they have failed to raise an issue capable of persuading a rational trier of fact that the EDA was not entitled to recover. Nor have the Graysons substantiated their claim that the district court erroneously based its decision on collateral estoppel grounds or failed to give the them ample opportunity to present the issues raised in their counterclaim. Therefore,

---

tions were wrongful; in fact, the Graysons' counsel conceded at oral argument that she did not know why DCASR had withheld its payments to Univox. Legal theories in the air, unmoored by any facts, cannot withstand a motion for summary judgment.

7. As the Graysons' counterclaims fail to raise a genuine issue of material fact, we need not determine whether these claims sound in contract or tort. We assume, for purposes of this

decision, that the district court had jurisdiction over all of the Graysons' claims pursuant to 42 U.S.C. § 3211 (1982).

8. Because the district court may have considered matters outside of the pleadings, we treat its dismissal of the counterclaim as a grant of summary judgment in favor of EDA. *See Costen v. Pauline's Sportswear, Inc.*, 391 F.2d 81, 85 (9th Cir.1968).

**626**

the district court's grant of summary judgment must be affirmed.