947 F.2d 952
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel E. WILLIAMS, Plaintiff-Appellant
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,
Defendant-Appellee.
 No. 90-56272.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 10, 1991.*
Decided Oct. 31, 1991.
 
 Before JAMES R. BROWNING, ALARCON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Daniel E. Williams appeals from the order granting summary judgment in favor of State Farm Mutual Automobile Insurance Company, et al (State Farm). Williams contends that summary judgment was improperly granted because genuine issues of material fact exist concerning whether, on August 14, 1984, the insured's Volkswagen was a newly acquired motor vehicle and, thus, covered by State Farm's insurance policy on August 14, 1984. Williams raises the following issues on appeal:
 
 
 3
 1. Genuine issues of material fact exist concerning whether the insured's Volkswagen became operational or "street legal" within 30 days prior to the collision between Williams and Brawley.
 
 
 4
 2. The district court erred in concluding that the Volkswagen was not covered by the policy on August 14, 1984, because it was acquired by Brawley more than 30 days before the accident.
 
 I.
 
 5
 Williams argues that the date when the Volkswagen became operational or "street legal" is a material fact that is in dispute. Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1986), cert. denied, 484 U.S. 1006 (1988).
 
 
 6
 We review an order granting summary judgment de novo. In re Bullion Reserve of North America, 922 F.2d 544, 546 (9th Cir.1991). "The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Id.
 
 
 7
 In order for this court to reverse the district court, the disputed facts must be deemed material. A material fact, for purposes of summary judgment, is one having a tendency to affect the outcome of a case. United States v. Grayson, 879 F.2d 620, 622 (9th Cir.1989).
 
 
 8
 Since jurisdiction in this case is based on diversity of citizenship, California law applies. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).
 
 
 9
 While there is clearly a conflict concerning the date when the Volkswagen first became operational, there is no conflict regarding the date when the engine was installed, nor that the Volkswagen was registered with the California Department of Motor Vehicles. Under the policy, this court must decide whether the Volkswagen was a motor vehicle designed for use mainly on public roads within 30 days of the date of the accident on August 14, 1984.
 
 II.
 
 10
 Williams contends that the Volkswagen was not "acquired," as that term is used in the policy, until it first became operational, or "street legal," the day of the accident. State Farm argues that "the Volkswagen qualified as a vehicle under the California Vehicle Code on the date the engine was installed."
 
 
 11
 The language of the policy is free from ambiguity. It defines a car as, "a land motor vehicle with four or more wheels, which is designed for use mainly on public roads...." The policy does not require that the motor vehicle be operational or "street legal" before it can be considered to be newly acquired.
 
 
 12
 The facts in this case are similar to those in Williams v. Standard Accident, 322 P.2d 1026 (Cal.Ct.App.1958). In Williams, the insured purchased a Chevrolet on January 25, 1952. Id. at 1028. At that time, he had a liability policy providing coverage for a Dodge automobile. Id. at 1027. When purchased, the Chevrolet had an engine, but had no wheels, tires, windshield, and was missing fenders and a headlight. Id. at 1028. The California Court of Appeal held that the Chevrolet was not a "newly acquired" automobile despite the fact it was not made operable until two days before the accident. Id. at 1029. The court held that the car was acquired by the insured more than 30 days prior to the accident. Id. The court in Williams also noted, "Obviously, the Chevrolet involved was an automobile and was registered ... as such, and the fact it was not in use on the highways and streets while being repaired did not change it into something else." Id. The Williams court also pointed out that the insured purchased the car as an automobile, obtained title to it and began to repair it immediately. Id. at 1029.
 
 
 13
 Williams asserts that the Williams decision is distinguishable because the car in that case was purchased with an engine. Williams at 1028. This distinction does not aid Williams' cause in this matter. Here, the evidence is undisputed that Brawley installed an engine in the Volkswagen two months after the Volkswagen was purchased in 1981. On that date, the Volkswagen was in the same condition as the car in Williams. It was a motor vehicle with an engine needing further repairs to be operational. Thus, as in Williams, the thirty-day coverage period began to run at the time Brawley was in possession of a motor vehicle with an engine. Because the engine was installed in late 1981, the Volkswagen was acquired more than thirty days before the accident on August 14, 1984. Therefore, the Volkswagen was not covered by the policy on the date of the accident.
 
 
 14
 This court's decision in Allstate v. Stevens, 445 F.2d 845 (9th Cir.1971), also supports our view that summary judgment was proper in this matter. In Allstate, the insurer issued a policy covering the insured's Oldsmobile from August 18, 1967 to August 18, 1968. The policy contained a provision providing coverage to "an additional ... automobile of which the named insured acquires ownership." Id. at 846. The policy also stated that, "[Allstate must be] provided notice of [the automobile's] delivery ... within thirty days after its delivery." Id. When the policy was issued, the insured also owned a 1958 Volkswagen with defective brakes. On January 17, 1968, after the Volkswagen's brakes were repaired, it was involved in an accident. An action was filed for declaratory relief to determine whether an inoperable car purchased before the policy period, which was then made operable during the policy period, was covered under the terms of the insurance policy. The trial court held that the term "acquired ownership" meant the "acquisition of an operable automobile." Id.
 
 
 15
 In reversing the trial court's judgment, we held that "the language of the policy is clear and should be given its ordinary meaning, and that when an insured makes operable an automobile owned by him before the policy period, the insured does not 'acquire ownership' of the vehicle by making it operable." Id. at 847.
 
 
 16
 As in Allstate, the Volkswagen in this appeal was purchased before the liability policy was issued. The fact that the Brawley Volkswagen was inoperable after the engine was installed does not affect the date it was acquired. Allstate stands for the proposition that a motor vehicle need not be operable to be deemed "acquired."
 
 
 17
 Relying on Farmers Insurance v. Schepler, 171 Cal.Rptr. 230 (Cal.Ct.App.1981), Williams contends that until the Volkswagen was completely repaired and driven, it was not a self-propelled vehicle. Schepler is factually distinguishable. In Schepler, the insured purchased an unassembled dune buggy kit approximately two to three months before the accident. Id. at 232. The insured first acquired a transaxle, then an engine and a kit containing tubular frame parts. It was necessary to weld these components together to form the basic structure of the vehicle. Id. About three weeks prior to the accident, the insured began assembling the collection of parts. Id. Approximately two weeks before the accident the vehicle was capable of being driven. Id. The dune buggy was never registered as a vehicle with the Department of Motor Vehicles. The California Court of Appeal noted that the insured had "only a collection of parts usable to construct a vehicle before the assembly began." Id. at 236. It also reasoned that "a pile of unassembled parts is neither a vehicle nor is it capable of self-propulsion." Id. The court in Schepler concluded that the insured's vehicle was covered by the thirty-day provision in the policy because "[t]here was no automobile to own, maintain or use until the assembly progressed to a point that a self-propelled vehicle was created." Id.
 
 
 18
 The California Court of Appeal's decision in Williams is consistent with the holding in Schepler. In Williams, the Chevrolet was an assembled automobile equipped with an engine when it was purchased. Williams at 1028. In Schepler, the dune buggy was a mass of parts incapable of self-propulsion until the parts were assembled to form an automobile. Schepler at 232.
 
 
 19
 Williams' reliance on authority from outside this circuit is misplaced. Each case can readily be distinguished. In Silverstein v. Liberty Mutual, 505 F.2d 158 (5th Cir.1974), a declaratory judgment action was brought to determine the extent of coverage under the "newly acquired" automobile provision of the policy. In affirming the district court, the Fifth Circuit held that the Chevrolet was covered under the "newly acquired" automobile provision since it had been totally inoperable when the policy was purchased. The Chevrolet was "without an engine and apparently without wheels [when the policy was purchased]." Id. at 160. In the instant case, Brawley installed an engine in the Volkswagen in late 1981, more than two years before the policy commenced.
 
 
 20
 Williams also relies on Glens Falls v. Gray, 386 F.2d 520 (5th Cir.1967), to support his contention that the Volkswagen was not newly acquired until it was operational. The Fifth Circuit affirmed the trial court's ruling that the Oldsmobile in question was covered under the policy. Id. at 523. The court held that "the term 'acquires ownership' ... may properly be construed as comprehending the acquisition of the operable Oldsmobile, along with title and 'actual' ownership ... during the policy year." Id. at 525 (emphasis in original). In Allstate, this court expressly disagreed with the construction given to the words "acquires ownership" in Glens Falls. Allstate 445 F.2d 845 at 846. We stated, "Moreover, [Glenn Falls ] is not binding on us and is distinguishable." Id. at 846. We distinguished Glens Falls in the following passage:
 
 
 21
 About a month prior to the issuance of the policy, the insured [in Glens Falls ] came into possession of a third automobile, an Oldsmobile, under an agreement of sale but did not acquire legal title until about a week after the policy period had begun. Thereafter, the insured was involved in an accident with the Oldsmobile. In holding there was coverage, the Fifth Circuit ruled that the insured's acquisition of legal title of the Oldsmobile after the issuance of the policy was determinative that ownership was acquired during the policy year.
 
 
 22
 Id. at 846-847 (emphasis in original). We also noted in Allstate that "in the Glens Falls case, the insured within the policy period, acquired legal title to the vehicle, became the registered owner thereof and put the vehicle in operable condition. In the case at bar [Allstate ], legal title was acquired before the policy period." Allstate at 847 (emphasis in original). In this matter, Brawley registered the Volkswagen and installed an engine in it before the policy was issued. At that time, in late 1981, the Volkswagen was a car as defined by the policy.
 
 
 23
 In Luke v. American Family Mutual, 476 F.2d 1015 (8th Cir.1972), cert. denied, 414 U.S. 856 (1973), the Eighth Circuit noted in dictum that "other courts construing the same [newly acquired car] provision have almost uniformly defined an owned automobile within the policy coverage as an operable automobile, one capable of being used on streets and highways." Id. at 1018. The court distinguished the Williams and Allstate cases as follows: "Cases which have differed from this view have usually done so where the car is temporarily inoperable and is being repaired for future service." Id. (emphasis added). In this matter, after the engine was installed, the Volkswagen was only temporarily inoperable while the repairs were completed.
 
 III
 Conclusion
 
 24
 The thirty-day period for coverage of newly acquired cars began to run when the engine was installed in the Volkswagen in late 1981. The fact that it was temporarily inoperable until the repairs were completed is not material. Therefore, we hold that the Volkswagen was not covered under the newly acquired car provision contained in the policy on the date of the accident.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument pursuant to Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3