**In re Charles ALCOCK and Bette Alcock, Debtors.**

**Charles ALCOCK and Bette Alcock, Appellants,**

**v.**

**SMALL BUSINESS ADMINISTRATION, Appellee.**

**BAP No. EC–92–1649–AJM.**
**Bankruptcy No. 986–00522.**
**Adv. No. 990–0067.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 23, 1993.

Decided April 20, 1993.

Robert Mehlhaff, Tracy, CA, for appellants.

Jeffrey W. Eisinger, Fresno, CA, for appellees.

Before: ASHLAND, JONES, and MEYERS, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

The guarantors Charles and Bette Alcock appeal the order of the bankruptcy court

allowing the claim of the lender, the Small Business Administration ("SBA"). The bankruptcy court found that the SBA's claim against Alcock was not affected or barred under California Commercial Code §§ 3606, 9504, or California Civil Code § 2819. We affirm.

## STATEMENT OF THE FACTS

On September 27, 1983 Top Pac Growers and Shippers, a California tomato packing and shipping corporation, borrowed $600,000 from Crocker Bank through a note guaranteed by the SBA for 75% of the amount due. Top Pac borrowed an additional $500,000 line of credit on the same day. The SBA and Crocker were partially secured by a deed of trust on the real property at the plant location. Crocker and the SBA agreed in writing that the SBA would have the first deed of trust to the real property while Crocker retained the second deed of trust. Crocker and the SBA were also secured by a perfected security interest in the equipment and by the guaranties of several parties, including Alcock. The guarantors were not secured by any interest. The plant was appraised at a value of $973,000, with the property valued at $320,000 and the equipment at $653,000. The guaranties were signed on September 27, 1983. As part of the agreement to obtain the line of credit, the SBA agreed to subordinate their interest in the real property on September 29, 1983 and retain first priority interest in the equipment. The SBA approved the lien priority switch stating that they were effectively collateralized by the interest in the equipment and by the net worth of the guarantors.

Top Pac defaulted on the loan in the spring of 1984. SBA honored its 75% guaranty of the note as requested by Crocker and Crocker retained a 25% interest in the equipment and first priority in the land. The note covering the equipment was then assigned to the SBA, including the collateral documents.

In March of 1985, Crocker foreclosed on the real property, pursuant to their first priority lien. The SBA declined any interest in the property. Since the real property no longer belonged to Top Pac, only the equipment and the guaranties remained as collateral for the balance of the note. On March 28, 1985, Crocker Bank purchased the real property for $130,000 at a trustee's sale.

In January of 1985, Crocker put the president of Top Pac in touch with a broker, Mr. Emilio Lemeni, to facilitate a sale of the equipment. Top Pac and Lemeni reached an agreement which included the following terms: 1) an up front payment of $5,000 (which was given by Lemeni upon acceptance of Top Pac's counteroffer); 2) a 50% payment of sale price ($94,000 less $5,000) upon the disassembling of equipment; and 3) final payment upon the loading of the rail car with the equipment.

Although the equipment had not been disassembled, Lemeni sent three interim payments of $5,000, $15,000 and $20,000 between late July and December of 1985. The first payment was made to Top Pac, the rest were made to Crocker because Crocker sent a letter to Lemeni on August 16, 1985 detailing the deal and instructing Lemeni to make all future payments jointly payable to Crocker and Top Pac and to deliver them to Crocker. The letter indicates that copies were sent to Top Pac and all of the guarantors. The last payment of $20,000 was returned for insufficient funds.

In that same month, the SBA wrote to Crocker Leasing Equipment, acknowledging Crocker Leasing's first lien on part of Top Pac's equipment. The SBA's acknowledgement was based on documents sent to them by Crocker Leasing in February of 1985, including a Lease Commitment and a Financial Statement showing Crocker Leasing's legal ownership of the equipment. The SBA also stated that $5,000 of the money received thus far would be applied toward that lien and consequently was given to Crocker Leasing.

Sometime between December of 1985 and March of 1986, the equipment was disassembled and removed from the Top Pac premises. It is not clear from the record who allowed the removal, nor who

took the equipment. Top Pac's letter of March 25, 1986 indicates that the equipment is in Lemeni's possession. The total dollar value received for the equipment was $25,000 ($5,000 up front and two interim payments totalling $20,000). Consequently, there remained a $69,000 ($94,000 less $25,000) deficiency between the value of the equipment under the contract and the amount of money received.

Top Pac sent a letter, date stamped March 25, 1986 (presumably the date of receipt), to Mr. Zayachek of Crocker Leasing Equipment, who was also the new loan officer in charge of the entire loan. Top Pac makes reference to money Top Pac owed Crocker Leasing for equipment that had been leased from Crocker Leasing. The president of Top Pac then states that the equipment has not been sold, that Lemeni is the selling agent for Top Pac and that he (the president) is doing his best to sell the equipment through Lemeni. It is not clear if Top Pac was referring to all the equipment or only to the equipment that was leased. Mr. Zayachek, however, later sent a letter to the SBA indicating that Top Pac was referring to all of the Top Pac equipment.

Mr. Alcock, a guarantor, filed a Chapter 11 bankruptcy on March 10, 1986. The SBA filed a claim for the deficiency on the Top Pac loan, in the amount of $507,016, guaranteed by Alcock. Subsequently Alcock filed an action to bar the SBA's claim on April 17, 1990. Alcock argued that the SBA violated California Commercial Code §§ 3606, 9504, and California Civil Code § 2819 through the impairment of the SBA's interests and not meeting various duties as prescribed by the statutes. On December 4, 1991, Alcock and the SBA submitted proposed findings of fact and conclusions of law. The bankruptcy court adopted the findings of the SBA and signed the order on June 1, 1992. This appeal followed.

## ISSUES

Whether the lenders, without the consent of the guarantors, impaired the value of the security, or suspended their rights and remedies under their notes and deeds of trust through the switch in lien priority.

Whether the lenders needed the consent of the guarantor, and if so, whether the lack of consent to the impairment effectively relieves the guarantor of his obligation.

Whether the lenders or the debtor conducted the sale of secured collateral and whether it was done in a commercially reasonable manner with notice to the guarantors of the collateral sale.

Whether failure to give notice to the guarantors or conduct the sale properly effectively discharges the obligation of the guarantors.

## STANDARD OF REVIEW

Findings of fact by a bankruptcy court are set aside only if clearly erroneous. FRBP 8013; *In re Dant & Russell, Inc.*, 951 F.2d 246, 250 (9th Cir.1991). Conclusions of law by a bankruptcy court are reviewed de novo. *In re Kristal*, 758 F.2d 454, 455 (9th Cir.1985). Findings of fact and conclusions of law prepared by counsel and adopted essentially verbatim by the trial court must be more carefully analyzed than those authored by the trial judge. *Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir.1981), *cert. denied*, 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981).

## DISCUSSION

The Alcocks filed a voluntary Chapter 11 petition on March 10, 1986. The SBA filed a claim against the Alcock estate for the deficiency of the Top Pac loan. Alcock subsequently initiated an action to bar the claim, advancing several arguments. Principally, Alcock claims the following impairments fall under the purview of California Commercial Code § 3606 and California Civil Code § 2819: 1) the switch of lien priority between Crocker and the SBA, without notice to the guarantors; 2) the release of collateral sale proceeds to another lienholder without the guarantors' consent; and 3) the release of the equipment without notice or consent and before full payment under the contract was made. Alcock's next argument centers around Cali-

fornia Commercial Code § 9504(3) which outlines the duties of a secured creditor when selling collateral. Alcock asserts that 1) the SBA and Crocker conducted the sale of equipment after default on the loan; and 2) did not do so in a commercially reasonable manner and did not give notice to the guarantors of the sale, as prescribed by § 9504(3).

### A. Impairment arguments

#### 1. The switch in lien priority was consented to by the guarantors.

Alcock asserts that the switch in lien priority diminished the total amount and value of the property given as security to the SBA. We acknowledge Alcock's argument has merit, however, both Code provisions cited under this argument state that an impairment may take place where consent was given. California Civil Code § 2819 states that a surety is exonerated:

if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, ..., in any way impaired or suspended.

Cal.Civ.Code § 2819 (West 1993).

Section 2819 was examined in *United States v. Grayson,* 879 F.2d 620 (9th Cir. 1989). In *Grayson,* the guarantors signed a guaranty agreement giving power to the creditor "in its uncontrolled discretion and without notice to the undersigned" to accelerate the loan upon default. The court found that this agreement unambiguously waived notice to the guarantors and held that lack of notice was thus not available as a defense. Similarly, Alcock signed an agreement waiving his right to notice and giving the creditors authorization to exchange the security. The Alcock guaranty agreement authorizes the:

Bank (whether or not after revocation or termination of this guaranty), without notice or demand (except as shall be required by applicable statute and cannot be waived), and without affecting or impairing their liability hereunder, from time to time ...; (b) take and hold secu-

rity for the payment of this guaranty or the indebtedness and exchange, enforce, waive and release any such security; ....

[E.R.Ex. 16, #5]. Accordingly, Alcock effectively waived the potential defenses provided by § 2819.

Nonetheless, Alcock asserts that *In re Kirkland,* 915 F.2d 1236 (9th Cir. 1990) limited the finding in *Grayson* to § 2819 issues and thus *Grayson* does not mandate denying the protection of § 3606 to Alcock. California Commercial Code § 3606 provides that a:

holder discharges any party to the instrument to the extent that *without such party's consent* the holder ... *unjustifiably impairs* any collateral for the instrument....

Cal.Com.Code § 3606 (West 1990) (emphasis added). A plain reading of § 3606 suggests that a holder will not be discharged of its debt where the collateral was justifiably impaired. The bankruptcy court agreed with this interpretation and found that the switch in lien priority was a justifiable impairment. We agree.

The purpose of the SBA is to help small businesses become established and survive. Here, the SBA agreed to subordinate its interest in the deed of trust in order to help Top Pac obtain an additional $500,000 line of credit from Crocker. The line of credit was necessary for Top Pac's continued existence as a viable business. Furthermore, Crocker was putting up $1.1 million and reasonably wanted a first priority to some of the collateral. Alcock has not put forth evidence nor argued that this impairment was not justified and thus we are not convinced by this argument.

Finally, Alcock maintains that the bankruptcy court incorrectly distinguished *Great Southwest Life Ins. Co. v. Frazier,* 860 F.2d 896 (9th Cir.1988). The court distinguished the case because in *Frazier,* unlike the case at bar, the alleged impairment occurred *after* default and thus needed an additional signed waiver after default according to the provisions of California Commercial Code § 9504(3). Alcock never-

theless asserts that the waiver is ineffective based on a duty of disclosure in suretyship relations as explained in *Sumitomo Bank v. Iwasaki,* 70 Cal.2d 81, 73 Cal.Rptr. 564, 447 P.2d 956 (1968). Alcock did not raise this argument during trial and it is being raised for the first time on appeal. This panel does not normally consider arguments raised for the first time on appeal. *Pitrat v. Garlikov,* 947 F.2d 419, 426 n. 12 (9th Cir.1991); *In re Film Ventures International, Inc.,* 89 B.R. 80 (9th Cir.BAP 1988). However, the panel has discretion to hear arguments for the first time on appeal when: 1) it is necessary to prevent a miscarriage of justice; 2) a new issue arises while appeal is pending because of change in the law; or 3) the issue presented concerns a question of law and not of fact. *Pitrat,* 947 F.2d at 426 n. 12 (citing *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985)). Here, the issue raised in *Sumitomo* involves a determination of intentional or negligent misrepresentation or active suppression of the truth. Deciding these issues entails questions of fact and therefore we decline consideration of this argument on appeal.

### 2. The deficiency would not necessarily have been lower had the SBA retained first priority interest in the real property.

■ Alcock asserts that had the SBA note been in its original place at the time of the real property sale, the deficiency now sought by the SBA would be lower, and thus it was an impairment caused by the switch in lien priority. California Civil Procedure Code § 580a enables a court to determine the deficiency owed by the debtor on foreclosed property by subtracting the fair market value from the amount owed on the deed. Alcock maintains that the fair market value of the property at the time it was sold was higher than the bid price. However, Alcock did not provide the panel with sufficient record to support this conclusion. Failure to include evidence of a contention in a record will negate the contention. *See, In re Xebec,* 147 B.R. 518, 525 (9th Cir.BAP 1992) (court rejected an argument based on inadequate record). Al-

cock presented the estimated value of the property two years before it was sold, but has presented no appraisals made closer to the time of the sale. He has therefore not clearly established that the lack of the SBA note having first lien on the property is an impairment based on this argument.

### 3. Release of collateral sale proceeds to a priority lien holder.

■ Alcock argues that the release of some proceeds from the buyer's partial payments to Crocker Leasing Equipment, without the consent of the guarantors, constitutes an impairment since Crocker was in effect put ahead of the SBA. Alcock reasons that the value of the SBA's first priority interest in the equipment was in effect reduced and thus impaired.

■ After the SBA was assigned all the rights under the notes, they were belatedly notified of a first lien held by Crocker Leasing on two tomato fillers. Although the record does not contain the actual lease agreement or financial statement, reference in the evidence to Crocker Leasing's ownership of the tomato fillers and the SBA's acknowledgement of this, establishes that Top Pac did not own the equipment and had merely leased the fillers.

■ Furthermore, the SBA had nothing to gain and had money to lose from recognizing the ownership, and thus probably would not have released some of their proceeds had they not thought that ownership had been established. Therefore, the bankruptcy court was correct in finding that as leased equipment the security interest of the SBA would not have been able to attach to the fillers since a borrower can only give a security interest in property to which he has title. The guarantors were thus not entitled to notice of the release of these proceeds, since it was money owed for equipment that did not constitute part of the collateral given as a security interest.

### 4. Release of equipment.

Alcock alleges that Crocker and the SBA impaired the security by permitting the

equipment to be taken by the purchaser without: 1) the consent of the guarantors; and 2) for a lower value than the terms of the negotiated contract between Top Pac and Mr. Lemeni. There is no evidence in the record, either in the form of a release order or work order, that establishes that either Crocker or the SBA had control over the equipment at the time it was taken. Nor is there evidence that they let the purchaser come and take the equipment and thus this argument must fail.

### B. The Sale Of The Collateral

Alcock argues that the SBA and Crocker conducted the sale of the equipment. He further argues based on this assertion that California Commercial Code § 9504(3) gave them the duty to conduct the sale in a commercially reasonable manner and give notice to the guarantors of the sale. Section 9504(3) delineates a secured party's right to dispose of collateral after default and states that: ·

> a sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner ... the secured party must give to the debtor, ... a notice in writing of the time and place of any public sale or ... private sale....

Cal.Civ.Code § 9504(3) (West 1990).

In *United States v. Kurtz*, 525 F.Supp. 734, 745 (E.D.N.Y.1981), *aff'd.*, 688 F.2d 827 (3d Cir.1982), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982), the court found that guarantors are within the class of persons that has an interest secured by collateral and thus may raise defenses based on § 9504(3). Thus, Alcock falls under the purview of this statute. The duties each party had necessarily depends on their involvement in the sale.

The SBA denies conducting the sale. The bankruptcy court found that Alcock had not demonstrated by a preponderance of the evidence that Crocker or the SBA had conducted the collateral sale. We agree. The record is filled with evidence indicating that Top Pac, the SBA, and

Crocker were cognizant of the details of the impending sale. The most telling evidence is the fact that Top Pac initially negotiated the contract with Lemeni and asserted responsibility for the sale of the equipment near to the time of the last correspondence. Thus, Top Pac was there at the beginning of the deal and quite near to the end. Crocker and the SBA did try to maintain some input in the sale by directly corresponding with Lemeni to change the method of payment to have checks made out to both Crocker and Top Pac. This change however necessarily involves the consent and participation of Top Pac.

The facts presented in the record coupled with the lack of evidence attributing the eventual release of the equipment to the SBA indicates that control of the sale must be attributed to Top Pac and not the SBA. Accordingly, the SBA does not fall within the parameters of § 9504(3) since they were not a secured creditor that conducted the collateral sale.

### 1. Duty to give Notice under Cal.Com. Code § 9504(3).

Alcock cites the case of *In re Kirkland*, 91 B.R. 551 (9th Cir.BAP 1988) as primary support for the alternative argument that the SBA had a duty to notice the sale because they either gave consent or gave direction for the sale. The SBA has presented persuasive arguments for the contentions that: 1) the *Kirkland* court did not visit the issue regarding the duties that are imposed upon the creditor when the borrower has conducted the sale; and 2) based on state case law the SBA did not have any duties toward the guarantors. The *Kirkland* court states that the President of Cascade [debtor] sold some equipment either with the consent or at the direction of Security Pacific [creditor/debtor]. The debt to Security Pacific is consequently discharged based upon this single reference. Thus it appears that the issue at hand was not litigated in that case and thus not fully considered. We shall do so here.

California case law indicates that § 9504(3) duties pertain only to sales of collateral by a secured creditor, not the debtor. *Security Pac. v. Geernaert*, 199 Cal.App.3d 1425, 245 Cal.Rptr. 712 (1988) (collateral was sold by a court appointed receiver); *Krueger v. Bank of Am.*, 145 Cal.App.3d 204, 193 Cal.Rptr. 322 (1983) (secured creditor allowed corporate debtor to dispose of collateral but did not conduct sale); *Brunzell v. Smith*, 200 Cal.App.3d 617, 246 Cal.Rptr. 182 (1988) (court found that creditor did not physically possess or otherwise assert control over the collateral). Thus, where the debtor conducts the sale and the creditor is involved in the details, no duties are imposed upon the secured creditors related to that sale. In any case, Alcock was given constructive notice of the equipment sale through a copy of a letter from Crocker to Lemeni.

## CONCLUSION

Alcock has not established that the SBA violated. California Civil Code § 2819 nor California Commercial Code §§ 3606, 9504(3), and thus the SBA's claim against Alcock cannot be barred based on the impairment and sale of collateral arguments presented. The switch in lien priority was consented to by Alcock in the signed guaranty agreement that gave the SBA authority to make the switch without requiring notice to Alcock. Furthermore, the switch was predicated on sound business reasons, and thus was not an unjustifiable impairment.

The SBA was legally justified in giving some of the collateral sale proceeds to the lessor of some Top Pac equipment. The lessor still owned the equipment and was entitled to priority compensation from the sale of the equipment. Since a security interest cannot attach to leased equipment, the SBA was not entitled to proceeds received for the leased equipment. Therefore, the SBA's security interest was not impaired by the release of collateral proceeds to the lessor. Finally, Alcock has not presented conclusive evidence that the SBA released the equipment to the purchaser before full payment was received and therefore impaired the security.

Regarding the sale of collateral, Alcock has not established that the SBA conducted the collateral sale. Therefore, the SBA was not subject to the requirements of California Commercial Code § 9504(3), and accordingly did not violate the statute.

Based on the foregoing, we affirm the holding of the bankruptcy court finding the SBA claim against Alcock is not barred.