33 F.3d 54
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Janet CRUMMEY and George Crummey, Plaintiffs-Appellants,
v.
STARR COMMONWEALTH, d/b/a the Starr Commonwealth Schools,
Defendant-Appellee.
 No. 93-3781.
 United States Court of Appeals, Sixth Circuit.
 Aug. 18, 1994.
 
 Before: KENNEDY and SILER, Circuit Judges; and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs Janet and George Crummey appeal the District Court's judgment in this personal injury action dismissing six claims and granting summary judgment for defendant on a seventh claim. Plaintiffs argue on appeal that genuine issues of material fact exist as to whether defendant Starr Commonwealth committed an intentional tort against plaintiffs. For the reasons stated below, we affirm.
 
 I.
 
 2
 This is an intentional tort claim against an employer brought under Ohio law. Jurisdiction is based on diversity of citizenship. Defendant Starr Commonwealth is a Michigan corporation which operates a residential facility for delinquent male juveniles in Van Wert, Ohio. The facility is a complex containing several cottages. Defendant is a complying employer pursuant to Ohio's workers' compensation law. Plaintiff Janet Crummey (hereinafter plaintiff)[1] is an Ohio resident who was employed by defendant as a night staff member at the facility. On the night of April 1, 1991, plaintiff was on duty at the Clara Starr Cottage on the Van Wert Campus. Five of the eleven male juveniles who reside in the cottage were present that night, the remaining residents having gone home for the Easter holiday. Two of them, Hosea and Torence, were not permitted to go home because they had been truant two weeks earlier.
 
 
 3
 At approximately 2:00 a.m. the following morning, plaintiff heard Hosea yell. Plaintiff went to Hosea's dorm room to investigate and found him missing from his room. She asked his roommate, Torence, where Hosea was but Torence did not respond. In the hallway, plaintiff saw Hosea running toward her carrying a guitar. Hosea struck plaintiff with the guitar, forced her to the floor, tied her arms and gagged her mouth. Hosea pulled plaintiff into his room and left her there. Torence then dragged plaintiff to an empty office and began to sexually molest and rape her. Plaintiff could hear the phone ringing and warned Torence that she had better answer it or people would come to investigate. Torence continued to rape her until Hosea came into the office with plaintiff's car keys and the two boys left the room. Torence returned to the office three times thereafter but was unable to enter because plaintiff had blocked the door with her body. On Torence's final return, an older boy named Mike told him to leave. Mike told plaintiff that he answered the phone and said she needed help. Plaintiff told Mike to go and get help. As plaintiff was leaving the cottage, two fellow employees pulled up in a car.
 
 
 4
 Plaintiff sued defendant alleging multiple claims sounding in tort and contract. After conducting discovery, defendant moved to dismiss and for summary judgment. The District Court entered judgment dismissing six of plaintiff's claims and granting summary judgment for defendant on the seventh. Plaintiff filed this timely appeal.
 
 II.
 
 5
 The only issue argued on appeal pertains to the second count of plaintiff's complaint.[2] That count alleged that defendant committed an intentional tort by requiring plaintiff to work under dangerous conditions. The District Court held that plaintiff could not establish that her injury was substantially certain to occur.
 
 
 6
 We note initially that we treat the District Court's "dismissal" as an order granting summary judgment. Rule 12(c) provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c). In this case, both parties presented, and the court accepted, documents in connection with defendant's motion. Although the District Court stated that "plaintiff has not stated a cause of action upon which relief may be granted," Joint App. 23, and thus appears to have relied on Rule 12(b)(6), the court appears to have considered matters outside the pleadings. For example, the court described the plaintiff's argument that defendant had knowledge of a dangerous condition as based in part on "the employees' complaints about lack of security." Joint App. 20-21. Although plaintiff discussed employee complaints in her deposition, she did not mention them in her complaint. Moreover, the allegations that the court referred to when it concluded that plaintiff failed to state a cause of action includes an allegation of "the violent tendencies of Hosea and Torence." Joint App. 23. Again this allegation was not in the complaint. The court uses the term "allegations." However, it appears it is using it not to describe the allegations of the complaint but what plaintiff claims, or alleges, the facts to be based on the evidence in the light most favorable to her. The court considered matters outside the pleadings and its order was in effect one for summary judgment. The court's characterization of its order as a dismissal does not change this conclusion. "As an appellate court, we are not bound to adhere to the [dismissal] label attached to the trial court's disposition of the case and may treat it as a summary judgment." United Bhd. of Carpenters and Joiners of America, Dresden Local No. 267 v. Ohio Carpenters Health and Welfare Fund, 926 F.2d 550, 558 (6th Cir.1991). See also Woods v. Dugan, 660 F.2d 379, 380-81 (8th Cir.1981) ("Because the district court considered the supporting affidavit in ruling on the defense motion in the instant case, the motion for dismissal of the complaint was in effect converted to a motion for summary judgment, and we must review the order granting the motion as one granting summary judgment."); United States v. Grayson, 879 F.2d 620, 625 n. 8 (9th Cir.1989); International Longshoremen's and Warehousemen's Union v. Kuntz, 334 F.2d 165, 171 n. 4 (9th Cir.1964).
 
 
 7
 We review a district court's grant of summary judgment de novo. Jones v. Tennessee Valley Auth., 948 F.2d 258, 261 (6th Cir.1991). Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where, looking to the record as a whole, a reasonable mind could come to only one conclusion, there is no genuine issue of material fact and summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986).
 
 
 8
 The applicable law in this diversity case is that of the State of Ohio. To prevail on an intentional tort claim against an employer in Ohio, a plaintiff must prove
 
 
 9
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
 
 
 10
 Fyffe v. Jeno's, Inc., 570 N.E.2d 1108, 1112 (Ohio 1991). An employer need not have actually intended or desired the injury but will be held liable if he "knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds." 570 N.E.2d at 1112.
 
 
 11
 In opposition to defendant's motion for summary judgment, plaintiff presented evidence in support of the following facts. Defendant's facility houses juveniles who have been adjudicated delinquent for conduct considered criminal if committed by an adult. Joint App. 79-80. Juveniles accepted by defendant may, in some cases, have committed very serious offenses. Joint App. 81. Defendant acknowledged that a potential exists for staff members to be assaulted by residents. Joint App. 82. Clara Starr Cottage, where plaintiff was attacked, houses juveniles who are between fifteen and seventeen years of age and who are the most physically mature residents of the Van Wert facility. Most of the residents were probably sexually active before coming to Clara Starr. Joint App. 89-90. The cottage has a capacity for twelve or thirteen juveniles.
 
 
 12
 Plaintiff was hired in 1987 to be a night staff member at the Clara Starr Cottage. She understood that residents were placed there by courts for delinquent behavior. Joint App. 110. Her job required her to stay awake all night in case problems arose and to make sure that the residents woke up and made it to school on time. Joint App. 91-92.
 
 
 13
 With regard to prior violence, such incidents had increased at defendant's facilities since the late 1980s, rising from two in 1988, to nine in 1989, to thirteen in 1990, to ten in 1991. In 1980, at a different campus from Van Wert, an employee was raped by a resident. Joint App. 77-78. In June, 1990, at the Van Wert facility, a resident of Clara Starr left that cottage, entered another, and grabbed a female staff member from behind. When the employee yelled, other residents came running and the assault was stopped. Joint App. 84.
 
 
 14
 In the Fall of 1990, meetings were held to discuss security. Staff members made various suggestions including hiring a night security guard and providing staff with a stunning weapon. They also expressed concern that persons could enter and exit the cottages too easily and that the campus had inadequate lighting. As a result of the meetings, defendant installed stops on the windows to prevent people from entering the cottage from the outside and installed additional lights in the parking lot. Joint App. 112. In addition, defendant assigned two roving "crisis intervention" persons to the night shift. One carried a beeper and the other carried a walkie-talkie.[3] The staff were also given portable phones. Joint App. 94. In early 1991, the crisis intervention people were reassigned and, thereafter, the night security consisted of two on-call staff members in the gate-houses at the front of the complex. Joint App. 97. The gate-houses are approximately 200 yards from the Clara Starr Cottage. The gate-house employees were not required to be awake and could leave the premises if they wished. During this time, relationships between residents and staff had deteriorated at some cottages including Clara Starr. Joint App. 88.
 
 
 15
 On the night of the attack, the security available to plaintiff consisted of the two persons residing at the gate-house, reachable by phone, and an administrator, reachable by beeper, who was sleeping at his off-campus home. Joint App. 85-86. The employees at the gate-house were not required to be there. If that were the case, then plaintiff would have to call the beeper of the administrator. In any event, plaintiff would need to use a phone to get help.
 
 
 16
 In support of her claim that defendant knew the security was inadequate, plaintiff cites a letter written by defendant to its staff in March, 1989, in which defendant states that security at the school was "becoming lax" and that it was "essential that we tighten up this security problem." The letter, however, was referring to the problem of truancy not violence. Joint App. 74.
 
 
 17
 Considering these facts, we conclude that plaintiff could not prove that defendant knew that injury to plaintiff was substantially certain to occur under the existing conditions. While there may have been a risk that, on some occasion, a resident would attempt to assault or rape a staff member, the risk that such an attempt would be made and result in injury was not so great as to rise to the level of a substantial certainty. Assuming alternative security measures could have prevented this incident, defendant's actions may have been negligent, at most reckless, but they cannot be characterized as intentional.
 
 
 18
 To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk--something short of substantial certainty--is not intent.
 
 
 19
 Fyffe, 570 N.E.2d at 1112, syllabus p 2, modifying Van Fossen v. Babcock & Wilcox Co., 522 N.E.2d 489, 491-92 (Ohio 1988), syllabus p 6. This was a horrible crime inflicted upon plaintiff. However, the policy of Ohio is to compensate injured employees through workers' compensation unless the employer acts intentionally. We conclude that the present record cannot establish that intent.
 
 IV.
 
 20
 For the foregoing reasons, the District Court's summary judgment in defendant's favor is AFFIRMED.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The issue on appeal pertains only to a claim of Janet Crummey's. For convenience, we shall use "plaintiff" when referring only to her
 
 
 [2]
 Plaintiff appeals only the District Court's ruling as to counts II (common law intentional tort) and count VI (loss of consortium). Plaintiff's brief, however, only addresses count II because the loss of consortium claim depends entirely on the success of the intentional tort claim
 
 
 [3]
 Plaintiff stated in oral argument that staff members in the cottage, such as plaintiff, never possessed walkie-talkies. We are therefore uncertain as to how the walkie-talkie carried by the night person increased the staff members' level of security